# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-3220

_____

Lyle Ridout

*Plaintiff - Appellant*

v.

JBS USA, LLC, also known as Swift Beef Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: April 11, 2013
Filed: June 14, 2013

_____

Before MURPHY, BEAM, and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

Lyle Ridout, a rendering superintendent at a pork processing plant owned by JBS USA, LLC, was discharged after an incident arising from an equipment failure and later replaced by two employees substantially younger than he. Ridout brought this action against JBS under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, and the Iowa Civil Rights Act (ICRA), Iowa Code § 216.6, alleging that age was the real reason for his discharge. JBS moved for summary judgment,

which the district court granted after concluding that Ridout had not shown that his employer's nondiscriminatory reasons were a pretext for age discrimination. Ridout appeals, and we reverse and remand.

## I.

Lyle Ridout began working for JBS, a pork processor, in 1968. In over forty years of employment at JBS's Marshalltown, Iowa plant he rose through the ranks and eventually became superintendent of the rendering department. As rendering superintendent, Ridout was supervised by plant engineer Cyrus Thill, plant manager Todd Carl, and general manager Troy Mulgrew.

Part of Ridout's job was overseeing equipment in the rendering department, including an instrument known as the "prehogor." The prehogor was used to grind scraps and bones of pork byproduct in order to create a material known as "crackling." From time to time the components of the prehogor wore out and needed to be replaced. These repairs were usually scheduled during overnight shift breaks because the prehogor was operated almost continuously throughout the day and night. Equipment downtime could back up the overall process significantly. The maintenance department and Ridout, as rendering superintendent, were jointly responsible for ensuring that equipment such as the prehogor was kept in working order and was repaired quickly when it broke down.

On May 13, 2010 the prehogor operator during the first shift reported to Ridout that there were problems with the machine. Although the prehogor was still functional, Ridout determined that the rotating assembly needed to be replaced. He directed the maintenance department to bring a backup assembly to the rendering department and install it during the overnight shift break. During the second shift the machine broke down entirely. The second shift supervisor was then forced to shut down production for several hours so that repairs could be made immediately.

Although the prehogor was restored to operation by the end of the third shift, a significant backlog of product had piled up during the downtime.

The next day plant engineer Thill, plant manager Carl, and general manager Mulgrew visited the rendering department. The backlog of product had not yet been cleared. Carl located Ridout in his office, and then all four men went over to the prehogor to discuss its failure the previous day. Mulgrew claims that Ridout became visibly upset and raised his voice during their discussion, and that he complained that management wanted to "point[] fingers" rather than allow him to spend his time fixing the problem. Mulgrew alleges that he told Ridout to "[t]one it down" or else he would be sent home. Ridout testified in his deposition that Mulgrew told him to "go home" when he raised his voice so he left work.

While Ridout admits that at the time he was frustrated that his supervisors were interfering with his repair efforts, he maintains that he never behaved in an aggressive manner. He admits that he raised his voice because the conversation took place directly next to a large piece of equipment, and employees in that area had to speak loudly to be heard over the noise. Ridout also points out that he had experienced considerable hearing loss due to working in the JBS factory for over forty years and that his hearing loss causes him to speak loudly. At the time of the meeting with his supervisors Ridout was sixty two years old.

A few days later Ridout was suspended without pay, and the human resources department asked his supervisor for a recommendation as to whether he should be terminated. Plant manager Carl suggested that they meet with Ridout to get his side of the story. At the meeting with Carl and the human resources department, Ridout expressed contrition for his statements to Mulgrew on May 14. He agreed that he should have handled the discussion differently and asked to return to work. He also proposed that if he could not remain rendering superintendent, he would agree to take a demotion to whatever position the company would see fit. Ridout also mentioned

the recent terminations of two other older supervisory level employees: Linn Knox and Dean Welton. Although both had been ostensibly terminated for safety violations, they claimed that that was a pretext and that each had been more carefully scrutinized because of their age. The human resources director later testified that he believed Ridout was trying to "fram[e] it up to say this was about [his] age" and denied that that was the basis for his termination.

Ridout's meeting with the human resources department focused mostly on the events of May 14 and not his overall historical performance. Mulgrew and Carl claimed in discovery that they had expressed concerns about Ridout "resisting" changes in the rendering department, but they provided no specifics or contemporaneous evidence of any such behavior. While Ridout's supervisors later claimed that Ridout's performance had been declining prior to May 14, they presented no specific examples or contemporaneous evidence of such a decline. In fact Ridout's last performance review had rated him as "meeting expectations." There was no mention of any issues with Ridout's performance until after the May 14 incident at the prehogor.

After the meeting the supervisors decided to terminate Ridout. General manager Mulgrew replaced Ridout with Chad Richett, who was between thirty five and thirty eight years old. Richett was subsequently demoted by Mulgrew a year and a half later due to inadequate performance. Mulgrew then hired John Holden, age thirty three, as the new rendering superintendent even though Holden had been terminated by JBS five years earlier for making a mock Ku Klux Klan hood out of industrial materials and displaying it to a black employee.

Ridout sued, alleging that his discharge was because of his age in violation of the Age Discrimination in Employment Act and the Iowa Civil Rights Act. JBS moved for summary judgment, and the district court concluded that Ridout had made out a prima facia case of age discrimination. It then proceeded to analyze the two

-4-

nondiscriminatory reasons JBS gave for Ridout's termination: that he had raised his voice to his supervisors and that his performance had declined. The district court concluded that Ridout had not demonstrated that these reasons were a pretext for age discrimination and granted summary judgment for JBS. Ridout appeals.

II.

We review the district court's grant of summary judgment to JBS de novo, viewing the facts in the light most favorable to Ridout and giving him the benefit of all reasonable inferences. Glascock v. Linn Cnty. Emergency Med., PC, 698 F.3d 695, 697–98 (8th Cir. 2012). Summary judgment is appropriate if there is no genuine dispute of material fact and JBS is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment will be denied if Ridout has produced sufficient evidence to allow a rational jury to find in his favor. See Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citing Ricci v. DeStefano, 557 U.S. 557, 585 (2009)).

Ridout brings this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), and the Iowa Civil Rights Act (ICRA), Iowa Code § 216.6(1)(a). Both statutes provide a right of action for an employee who is terminated "because of" his age. 29 U.S.C. § 623(a)(1); Iowa Code § 216.6(1)(a). The statutes require slightly different showings of causation, compare Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 178 (2009) (ADEA plaintiff must show that age discrimination was a "but[] for" cause of his termination) with DeBoom v. Raining Rose, Inc., 772 N.W.2d 1, 13 (Iowa 2009) (ICRA plaintiff need only show that age discrimination was a "motivating factor"). The difference is not important in this case because Ridout has produced sufficient evidence to allow a rational factfinder to find in his favor under either statute.

-5-

In reviewing a grant of summary judgment under either the ADEA or ICRA, we apply the familiar McDonnell Douglas test. See Tusing v. Des Moines Ind. Cmty. Sch. Dist., 639 F.3d 507, 514–16 (8th Cir. 2011). At the first step of the analysis, the plaintiff has the burden of establishing a prima facie case of age discrimination. Id. at 515. A successful showing creates a presumption that the employer unlawfully discriminated against the plaintiff and shifts the burden to the employer to articulate a legitimate nondiscriminatory reason for its actions. Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 681 (8th Cir. 2012). If the employer meets this burden, the presumption of discrimination dissolves and the burden returns to the plaintiff to demonstrate that the proffered reason is a mere pretext for age discrimination. Id.

It is undisputed that Ridout and JBS have both met their burdens at the first two steps of the McDonnell Douglas test. The district court concluded, and JBS concedes, that Ridout successfully made out a prima facie case by producing evidence that he had been over forty years old at the time of his termination, that he had been meeting JBS's reasonable expectations at the time of his termination, and that he had been replaced by a substantially younger individual. See Haigh v. Gelita USA, Inc., 632 F.3d 464, 468 (8th Cir. 2011). Likewise, Ridout concedes that the district court correctly concluded that JBS had met its burden of articulating a legitimate nondiscriminatory reason for his termination. JBS contends that Ridout's termination resulted not from age discrimination, but from his declining performance and insubordination. The only question here is whether Ridout has made a sufficient showing that JBS's proffered reasons are a mere pretext for age discrimination to avoid summary judgment.

JBS's first proffered reason for terminating Ridout is declining performance. While "it is possible for strong evidence of a prima facie case to also present a factual issue on pretext," Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc), that is particularly true when the alleged nondiscriminatory reason is

inferior performance since that "is simply the negative of one of the elements of the prima facie case." Erickson v. Farmland Indus., Inc., 271 F.3d 718, 726 (8th Cir. 2001). In other words, a strong showing that the plaintiff was meeting his employer's reasonable expectations at the time of termination may create a fact issue as to pretext when the employer claims that the employee was terminated for poor or declining performance. This is precisely the case here.

Although JBS alleges that Ridout was terminated for declining performance, he has presented evidence that the company considered his performance satisfactory until he was suspended without pay. He had never been counseled or warned about any declining performance prior to his termination. There is evidence that Ridout was a productive and satisfactory employee for over forty years. While his supervisors complained after his termination that he had been "resistant" to proposed changes in the rendering department, they offer no specific examples and no contemporaneous evidence to provide substance to their assertions. On this record a rational trier of fact could find that termination was not the true reason for Ridout's termination.

JBS's other proffered reason for firing Ridout is insubordination. An employee can demonstrate pretext "by showing that it was unlikely an employer would have acted on the basis of the proffered reason." Erickson, 271 F.3d at 727. This does not mean that the employee must show that "the proffered explanation had no basis in fact" and was only conjured out of thin air. See id. The employee may demonstrate pretext by showing that "it was not the employer's policy or practice to respond to such problems in the way it responded in the plaintiff's case." Id. It is undisputed that the alleged insubordination involved Ridout's swearing and raising his voice in the middle of the factory floor next to a very loud piece of equipment.

While Ridout admits that under the circumstances he may well have appeared to be annoyed, he has presented evidence to suggest that JBS's decision to terminate

him for this conduct was not typical of the company's policy or practice. JBS supervisors admitted in depositions that it was common to raise one's voice on the factory floor where the noise may drown out quieter voices. The supervisors also admitted that heated arguments involving swearing were relatively common among the workers in the factory. None of the supervisors could recall a single other instance where any employee had been terminated for yelling or swearing.

In addition Ridout offers evidence that younger employees were treated more leniently when they committed infractions of comparable seriousness. After his termination, the post of rendering superintendent was filled successively by two employees who were in their thirties and thus substantially younger than Ridout. The first, Richett, was subsequently demoted for poor performance. Ridout argues that this demotion tends to show that it was not JBS's policy to terminate employees for declining performance. The second, Holden, was rehired as rendering superintendent after having been fired five years earlier for racist behavior. Ridout argues that this tends to show that JBS did not view a behavioral offense as a bar to holding the position of rendering superintendent. While JBS argues that evidence of Holden's racist conduct is inadmissible hearsay, Ridout correctly points out that records of the disputed conduct are admissible as documents kept in the course of regularly conducted business. See Fed. R. Evid. 803(6).

JBS argues that Richett and Holden are not valid comparators. According to JBS, a plaintiff may not rely on evidence that other employees were treated more leniently unless they "dealt with the same supervisor, [were] subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." EEOC v. Kohler Co., 335 F.3d 766, 776 (8th Cir. 2003). JBS contends that since Richett and Holden did not engage in the exact same infractions as Ridout, the two have no value as comparators.

The "similarly situated co-worker inquiry is a search for a substantially similar employee, not for a clone." Chaney v. Plainfield Healthcare Ctr., 612 F.3d 908, 916 (7th Cir. 2010). In order to rely on comparator evidence such as Ridout offers, he must prove only that the other employees were "similarly situated in all relevant respects." Lynn v. Deaconess Med. Ctr.-W. Campus, 160 F.3d 484, 487 (8th Cir. 1998) (quoting Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)). To demonstrate that they are "similarly situated," he "need only establish that he or she was treated differently than other employees whose violations were of comparable seriousness." Id. at 488 (quotation omitted, emphasis added). In Lynn we explicitly rejected the notion that comparator analysis requires that the compared employees engaged in "the exact same offense." Id. We observed that demanding that the compared employees have engaged in precisely identical conduct would make an employee's conduct which was more serious than that of the plaintiff irrelevant to the analysis. Id. "Common sense as well as our case law dictates that we reject such an approach." Id.

The Kohler rule could appear inconsistent with our court's earlier precedent including the Lynn case. To the extent that there were a real conflict, however, Kohler would yield to the earlier rule. See Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc). We do not interpret Kohler to present a conflict because it simply stands for the unremarkable proposition that the ideal comparator will match the characteristics of the plaintiff employee in as many respects as possible. See 335 F.3d at 766. While no employee is a precise clone of another, see Chaney, 613 F.3d at 916, the probative value of comparator evidence will be greatest when the circumstances faced by the putative comparators are most similar to the plaintiff's. Where evidence demonstrates that a comparator engaged in acts of "comparable seriousness" but was disciplined differently, a factfinder may decide whether the differential treatment is attributable to discrimination or some other cause. See Lynn, 160 F.3d at 489.

-9-

The facts in <u>Lynn</u> are instructive. In that case, nurse Lynn had been previously disciplined for tardiness, a disrespectful attitude, lack of productivity, failure to assist a patient with therapeutic equipment, and incorrect document preparation. 160 F.3d at 486. He was eventually discharged because his work performance reflected "a serious lack of appropriate nursing judgment." <u>Id.</u> Lynn's comparator was another nurse named Mohr who had been repeatedly sleeping on the job, but who received only minor and belated discipline. <u>Id.</u> at 487 The district court considered Mohr's infractions to be different in type and thus not comparable; Mohr also had a less extensive disciplinary history than Lynn. <u>Id.</u>

We reversed the grant of summary judgment to Lynn's employer after concluding that the district court had erred by ignoring Lynn's comparator analysis. <u>Id.</u> at 488. While a factfinder could find the differences between Lynn and Mohr sufficient to defeat a claim of pretext, it would not be obligated to do so. <u>Id.</u> Mohr's sleeping on the job was a more serious offense than anything Lynn had been accused of, particularly since it had sometimes occurred while Mohr was the only nurse on duty. <u>Id.</u> In addition, the two had different disciplinary histories, at least arguably the result of disparate treatment. <u>Id.</u> Lynn had a sterling performance record prior to working under his last supervisor who was notably quicker to discipline him than Mohr. <u>Id.</u> Since Mohr's record showed "the same kind of 'serious lack of appropriate nursing judgment' that resulted in Lynn's discharge," the comparator analysis was sufficient to create a genuine fact issue over pretext. <u>Id.</u> at 489.

On the record before the court, it is evident that Richett is a valid comparator for Ridout even under the strictest reading of <u>Kohler</u>. Richett was accused of the same infraction as Ridout (poor performance), by the same supervisor (Mulgrew), while in the same position (rendering superintendent), and he received only a demotion while Ridout lost his position with the company. <u>See</u> <u>Kohler</u>, 335 F.3d at 776. Holden is a valid comparator for JBS's insubordination justification for its discharge of Ridout.

-10-

Crafting a mock Ku Klux Klan hood and displaying it to an African American employee was at the very least "comparabl[y] serious[]" to raising one's voice during an argument on a loud factory floor. See Lynn, 160 F.3d at 488. Thus, a factfinder could find that JBS's decision to rehire Holden for Ridout's former position was evidence that younger employees received more lenient treatment when engaging in offenses of comparable severity to Ridout's ourburst on the factory floor amid frustration over the breakdown of the prehogor.

Ridout's final type of evidence is that a number of other older employees were terminated around the same time as he. A demonstrated pattern of preference for younger employees can help prove discriminatory intent. Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1166 (8th Cir. 1985). Ridout presented evidence in the district court that four of five salaried (i.e., supervisory) employees terminated by JBS between July 2009 and July 2010 were over forty years of age. In its written summary judgment opinion, the district court explained that it discounted this evidence because the ranks of hourly (i.e., nonsupervisory) employees terminated in that period contained a much lower percentage of employees over forty. That was not the relevant group for comparison, however.

The relevant group of which Ridout was a part was made up of the salaried, supervisory employees. Hourly employees at JBS's plant are unionized and thus their termination occurs through a markedly different procedure and raises different issues. It is difficult to weigh the probative value of Ridout's statistics without also knowing what percentage of the unterminated salaried employees were over forty. A reasonable inference of a discriminatory pattern may however be drawn from evidence that nearly all the terminated employees were over forty. Acevedo-Parilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 146 (1st Cir. 2012).

Taken together, Ridout's evidence is sufficient to allow a rational factfinder to find that JBS's proffered reasons for terminating him were pretextual. Demonstrating that JBS's reasons are "unworthy of credence" would support a finding of age discrimination because "a trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000). While a prima facie case and evidence of pretext is not always sufficient to send a case to a jury, we have concluded that it is enough "unless the evidence of pretext . . . is, standing alone, inconsistent with a reasonable inference of age discrimination." Maschka v. Genuine Parts Co., 122 F.3d 566, 571 (8th Cir. 1997) (citation and internal quotation marks omitted). Thus, in Rothmeier v. Inv. Advisers, Inc., we affirmed summary judgment for the employer where the plaintiff's proof of pretext tended to show that he was fired for confronting his superiors about alleged securities law violations. 85 F.3d 1328, 1337 (8th Cir. 1996).

Here, by contrast, Ridout's evidence is not inconsistent with a reasonable inference of age discrimination; in fact it is entirely consistent with such an inference. See Maschka, 122 F.3d at 571. On such a record the ultimate question as to whether Ridout's termination was a result of unlawful discrimination is not one for summary judgment.

### III.

For all these reasons, we reverse the grant of summary judgment and remand to the district court for further proceedings consistent with this opinion.

_____