# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3020

_____

Elizabeth Burciaga

*Plaintiff - Appellant*

v.

Ravago Americas LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: April 14, 2015
Filed: July 2, 2015

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Elizabeth Burciaga sued her employer, Ravago Americas LLC (Ravago), alleging Ravago violated her rights under the Family Medical Leave Act (FMLA), 29

U.S.C. §§ 2601-2654. The district court[1] granted summary judgment in favor of Ravago, and Burciaga appeals. We affirm.

I

Burciaga began working at one of Ravago's unit branches in August 2007 as a customer service representative (CSR). The unit branch was responsible for distributing plastic and rubber resin, and as a CSR, Burciaga's tasks included contacting sales representatives and customers, receiving and processing orders, scheduling shipments, and resolving customer issues. For the duration of Burciaga's employment with Ravago, Jeremy Howe, a customer service manager, served as her supervisor.

Prior to the FMLA leave at issue in this case, Burciaga utilized FMLA leave during her employment with Ravago on two separate occasions, in 2008 and late 2010 through early 2011, for the births of her children. Burciaga did not inform Howe this leave was taken pursuant to the FMLA and was unaware whether Howe knew she was taking FMLA leave. Ravago's Director of Human Resources Donna Comey indicated, however, her general practice is to inform an employee's local management team when the employee takes FMLA leave. Howe described a general lack of knowledge about FMLA leave and explained his concern when Burciaga was absent from work was only that her desk was covered by another employee. Burciaga remained employed and received annual raises after each of these occasions taking FMLA leave.

After Burciaga returned to work in 2011, she had several performance-related issues. In May 2011, Burciaga took a lunch break which Howe considered longer

---

[1]The Honorable James E. Gritzner, then Chief Judge, United States District Court for the Southern District of Iowa.

than a normal lunch break without notifying Howe. Howe began keeping notes about Burciaga after this occurrence. Howe could not recall taking notes about other CSRs after they had taken longer than normal lunch breaks, but he did express that he took notes about other CSRs. Later, Burciaga made a shipping error by shipping an order which she had already shipped under a different purchase order. Howe met with Burciaga about the error and warned her about errors she had recently been making, including one from the prior week. Howe explained to Burciaga to take her time and enter orders correctly because if the errors continued, she may be terminated.

Burciaga next requested FMLA paperwork on or about July 27, 2012, for intermittent leave to care for her son. Ravago's human resources department processed Burciaga's request and approved her FMLA leave. Burciaga did not inform Howe that she requested FMLA leave but indicated to Howe that she was going to be absent from work to tend to her son. According to Burciaga, Howe provided her time off for appointments when she requested it and was flexible with scheduling so she could attend appointments. Howe expressed during his deposition, however, that he was "probably a little frustrated" by Burciaga's need to miss work. Burciaga thereafter took FMLA leave for half a day on August 8, 2012, September 5, 2012, and September 6, 2012.

After Burciaga returned from leave on September 6, she committed a series of shipping errors over the following three weeks. On September 10, Burciaga entered an order for 15,000 pounds of material into the system when the customer ordered 22,500 pounds of material. Howe caught the error prior to the order being shipped and directed Burciaga to correct it. Howe indicated he "felt like [he] had to micromanage [Burciaga]" after this error. The following day, September 11, Burciaga submitted and shipped material under the wrong customer number. Howe had to remind Burciaga twice before she completed a corrective action form, which Ravago requires its employees to complete to inform the company of the error. Howe again noted he felt as though he needed to micromanage Burciaga.

-3-

Then, on September 18, Burciaga shipped the wrong material to a customer. She again shipped the wrong material to a customer on September 27. This error resulted after Burciaga failed to verify customers with whom she had long-term, prior experience and caused a shipment to be addressed for Arizona instead of Utah. The shipment, however, never reached Arizona because Burciaga approached Logistics Coordinator John Eighmey who was able to reroute the shipment. When Burciaga explained to Eighmey how poorly she felt about sending the material to the incorrect customer, Eighmey explained he could easily solve the issue and characterized it as a "piece of cake" and not a "big deal."

Burciaga spoke with Howe the following day about the error. Howe also spoke with Eighmey about the error, and Eighmey complained to Howe that Burciaga habitually made shipping errors. Howe described being frustrated that Burciaga failed to recognize her own clients and sent a shipment without verifying the proper client. He believed Burciaga, a CSR with five years of experience, should not be making the kind and number of errors she was making.

Howe subsequently met with Stephen Kramer, a controller at Ravago, to discuss Howe's concerns about the errors and whether termination of Burciaga was appropriate. Howe then placed a call to Comey about proper procedure, but he instead spoke with Jennifer Feliciano, a payroll and benefits administrator. Feliciano explained that when she spoke with Howe, Howe was still considering Burciaga's termination and did not know Burciaga had completed or taken FMLA leave. Feliciano explained she then provided Howe with information about Burciaga's FMLA leave.

Howe later communicated with Comey about Burciaga's termination, and on the afternoon of the 28th, he and Kramer met with Burciaga to terminate Burciaga's employment. Howe indicated the termination was due to Burciaga's shipping errors and that Ravago could not afford continued, costly mistakes because they could

impact Ravago's reputation. When Burciaga requested a full report of her errors, Howe replied it would not affect the decision. Howe also could not provide Burciaga with the specific monetary amount her errors costed Ravago. Neither Howe nor Kramer referenced Burciaga's FMLA leave or absences from work during the meeting.

Burciaga thereafter filed suit against Ravago in Iowa state district court, alleging Ravago violated her rights under the FMLA by terminating her employment. Ravago removed the suit to federal court and thereafter filed a motion for summary judgment. The district court granted summary judgment to Ravago, finding Burciaga failed to present sufficient evidence demonstrating a causal connection between her termination and FMLA leave. The district court further found Burciaga did not present sufficient evidence of pretext. Burciaga appeals.

II

"We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences that can be drawn from the record." Johnson v. Wells Fargo Bank, N.A., 744 F.3d 539, 541 (8th Cir. 2014) (internal quotation marks omitted). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"The FMLA provides eligible employees up to 12 workweeks of unpaid leave during any 12-month period." Marez v. Saint-Gobain Containers, Inc., 688 F.3d 958, 963 (8th Cir. 2012) (internal quotation marks omitted). An employer may not "interfere with, restrain, or deny the exercise of or attempt to exercise, any right" under the FMLA. 29 U.S.C. § 2615(a)(1). There are two types of claims under § 2615(a)(1), entitlement claims and discrimination claims. Hudson v. Tyson Fresh

Meats, Inc., — F.3d —, 2015 WL 2434933, at *2 (8th Cir. May 22, 2015).[2] Burciaga asserts a discrimination claim against Ravago. A discrimination claim occurs when "an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA." Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1006 (8th Cir. 2012). "An employee making [a discrimination] claim must prove that the employer was motivated by the employee's exercise of rights under the FMLA." Id. Using FMLA leave "does not give an employee any greater protection against termination for reasons unrelated to the FMLA than was available before." Malloy v. U.S. Postal Serv., 756 F.3d 1088, 1090 (8th Cir. 2014).

"Absent direct evidence, an FMLA discrimination claim is analyzed under the McDonnell Douglas burden-shifting framework." Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1016 (8th Cir. 2013). For Burciaga to establish a prima facie case of FMLA discrimination, she must show: "(1) that [s]he engaged in activity protected under the Act; (2) that [s]he suffered a materially adverse employment action, and (3) that a causal connection existed between [her] action and the adverse employment action." Pulczinski, 691 F.3d at 1007. "[T]he burden [then] shifts to [Ravago] to articulate a legitimate, nondiscriminatory reason for its challenged actions." Stallings v. Hussmann Corp., 447 F.3d 1041, 1051 (8th Cir. 2006) (internal quotation marks omitted). "The employee may then demonstrate that the proffered reason is pretextual . . . ." Hudson, 2015 WL 2434933, at *3.

Here, the district court determined Burciaga could not withstand summary judgment on her prima facie case because she failed to present sufficient evidence of a causal connection between her FMLA leave and her termination. Specifically, the district court determined evidence of temporal proximity alone was insufficient to

---

[2]A third type of FMLA claim, a "retaliation" claim, exists under § 2615(a)(2). See Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1005-06 (8th Cir. 2012) (recognizing three distinct claims under FMLA).

establish the causal connection and evidence regarding Howe's general attitude toward Burciaga's absences did not create a genuine issue of material fact to withstand summary judgment. On appeal, Burciaga contends the district court erred and should have considered evidence she presented which demonstrated similarly-situated employees who committed shipping errors were treated more favorably than Burciaga. Citing Marez, 688 F.3d at 963-64, Burciaga maintains this evidence was more than sufficient to withstand summary judgment on her prima facie case.

For purposes of this appeal, however, we need not decide whether Burciaga presented sufficient evidence to demonstrate causation. Even if we were to assume Burciaga established a prima facie case, Ravago rebutted Burciaga's evidence by articulating a "non-discriminatory, legitimate justification for its conduct," Wierman v. Casey's Gen. Stores, 638 F.3d 984, 993 (8th Cir. 2011)—Burciaga's shipping errors. Consequently, Burciaga was tasked with presenting sufficient evidence of pretext in order to survive Ravago's motion for summary judgment. See Lovland v. Emp'rs Mut. Cas. Co., 674 F.3d 806, 814 (8th Cir. 2012) (finding the district court properly granted summary judgment where "Lovland failed to present evidence creating an issue of fact whether EMC's non-discriminatory reasons were a pretext for FMLA retaliation"). Burciaga may demonstrate pretext by "showing that the employer's proffered explanation is unworthy of credence or persuading the court that a prohibited reason more likely motivated the employer." Hudson, 2015 WL 2434933, at *3 (internal quotation marks omitted).

First, Burciaga contends she presented sufficient evidence to survive summary judgment on the issue of pretext because Ravago treated similarly-situated employees more favorably than her. Specifically, Burciaga maintains at least seven other employees made shipping errors as frequently as she did in September 2012 and were not disciplined.

"At the pretext stage, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one." Burton v. Ark. Sec'y of State, 737 F.3d 1219, 1230 (8th Cir. 2013) (internal quotation marks omitted). In order to rely on similarly-situated evidence, an employee "must prove only that the other employees were similarly situated in all relevant respects." Ridout v. JBS USA, LLC, 716 F.3d 1079, 1085 (8th Cir. 2013) (internal quotation marks omitted). "To demonstrate that they are similarly situated, [the employee] need only establish that he or she was treated differently than other employees whose violations were of *comparable seriousness*." Id. (internal quotation marks omitted). That is, "the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Wierman, 638 F.3d at 994 (internal quotation marks omitted). "Where evidence demonstrates that a comparator engaged in acts of 'comparable seriousness' but was disciplined differently, a factfinder may decide whether the differential treatment is attributable to discrimination or some other cause." Ridout, 716 F.3d at 1085.

After reviewing the record, we find Burciaga failed to present sufficient evidence demonstrating fellow employees were similarly situated to her. Burciaga committed four shipping errors in seventeen days, and Howe considered her errors particularly egregious because Burciaga committed these errors with five years of experience as a CSR and committed the final error by failing to discern between two of her own clients. Howe was unaware of any other CSRs committing an error of this nature. Although Burciaga presented evidence of shipping errors committed by her fellow employees, these employees did not commit the number of errors Burciaga did within such a short span of time, see Williams v. Saint Luke's-Shawnee Mission Health System Inc., 276 F.3d 1057, 1060 (8th Cir. 2002) (finding it significant that the number of accusations against the plaintiff was higher than other employees), the majority of the fellow employees did not have the same or similar amount of experience when they committed their errors as Burciaga did when she committed

hers, see Bogren v. Minnesota, 236 F.3d 399, 405 (8th Cir. 2000) ("[T]roopers beyond the probationary period are not similarly situated to a probationary trooper."), and the evidence presented by Burciaga is unclear as to whether the errors committed by Burciaga's fellow employees involved a CSR failing to recognize between his or her own long-term clients. Howe stressed that errors of that nature could be costly to Ravago's reputation. See Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 682 (8th Cir. 2012) (finding the employee failed to present evidence of similarly-situated physicians because he failed to present evidence addressing the reasons proffered by the employer for revoking his privileges). Consequently, Burciaga failed to present sufficient evidence demonstrating her fellow employees engaged in the same conduct as she did without any mitigating or distinguishing circumstances and committed errors of comparable seriousness. Burciaga's fellow employees, therefore, were not similarly situated to her.

Notwithstanding any alleged evidence pertaining to similarly-situated employees, Burciaga presents several other reasons in an attempt to demonstrate pretext. Specifically, Burciaga maintains Howe exaggerated the seriousness of Burciaga's error on September 27, 2012, because Eighmey characterized the error as not a "big deal" and had seen a "bigger mistake" by another CSR; Howe indicated during Burciaga's termination meeting that a full report of her shipping errors would not affect his decision; Howe indicated Burciaga's error was "costly" when he could not provide how much the error would cost Ravago; Ravago pointed to no objective criteria concerning shipping errors made by CSRs and what constitutes an unacceptable number, or degree, of errors, which allowed for Howe to offer a self-serving, after-the-fact explanation for his motivation to terminate Burciaga; and Howe admitted he was "probably a little frustrated" by Burciaga's need to be absent from work. We disagree.

None of the contentions provided by Burciaga show any discriminatory animus on behalf of Howe because Burciaga utilized FMLA leave and are insufficient for a

reasonable fact finder to infer intentional discrimination. First, the reasonable inference from Eighmey's "big deal" statement is that he was referring to his ability to reroute the shipment rather than the severity of Burciaga's error. Eighmey was not a CSR manager, but rather, a logistics coordinator. Further, although Eighmey had seen a "bigger mistake," the other CSR's error is distinguishable from Burciaga's. Eighmey also complained to Howe about Burciaga habitually making shipping errors.

Second, Burciaga fails to provide sufficient reasons why Howe's lack of providing a full report of her errors demonstrates pretext. Burciaga admitted she made the shipping errors at issue, and neither Howe nor Kramer made any indication to Burciaga during their meeting that her FMLA leave was the reason for her termination. Howe also previously informed Burciaga of the possibility of termination if she continued making shipping errors.

Third, when considering Howe's statement pertaining to the cost of Burciaga's errors in the context it was made, the reasonable inference derived from the statement is that it was not a literal reference to a monetary amount. Instead, Howe's statement referred to suffering or damage which could result to Ravago's reputation by shipping errors of that nature. Burciaga does not dispute that the errors could damage Ravago's reputation.

Fourth, Burciaga fails to provide how Howe created an after-the-fact explanation for her termination. During the meeting between Howe, Kramer, and Burciaga, Howe indicated the reason for Burciaga's termination was her shipping errors, and Howe has maintained a consistent explanation for the termination. When an employer does not waver from its explanation, the circumstances militate against a finding of pretext. See EEOC v. Trans States Airlines, Inc., 462 F.3d 987, 995 (8th Cir. 2006) (noting the employer never wavered from its one explanation for terminating the plaintiff and distinguishing those cases in which the employers' substantial change in position supported an inference of pretext).

Lastly, although Howe indicated in his deposition he was "probably a little frustrated" by Burciaga's need to be absent from work, Burciaga provided no context or timetable for Howe's sentiment or whether it related to her FMLA leave at issue in this matter. See Ghane v. West, 148 F.3d 979, 982 (8th Cir. 1998) (holding evidence insufficient as a matter of law to support a reasonable inference that the employer's proffered reasons for discharging the employee were pretextual "because there [was] no evidence that [a] remark was . . . made in connection with the decisional process"). Additionally, Howe allowed Burciaga the flexibility to rearrange her schedule and take time off of work, and he never made any comments about Burciaga's need to take FMLA leave. His only concern when Burciaga was absent from work was that her desk was covered by a fellow employee. Burciaga's suggested inference from Howe's comment, based on the record, is too tenuous to demonstrate pretext. See Hoffman v. Rubin, 193 F.3d 959, 965 (8th Cir. 1999).

Burciaga also took FMLA leave on two prior occasions without repercussions, suggesting Howe and Ravago were not hostile to the protected activity. See Chappell v. Bilco, Co., 675 F.3d 1110, 1120 (8th Cir. 2012) ("[Chappell's] numerous uses of FMLA leave without negative consequences support Bilco's non-discriminatory and non-retaliatory justification for Chappell's termination."). "[T]o survive summary judgment, [the plaintiff] must adduce enough admissible evidence to raise genuine doubt as to the legitimacy of a defendant's motive, even if that evidence does not directly contradict or disprove a defendant's articulated reasons for its actions." Id. at 1119-20 (alterations in original) (internal quotation marks omitted). Burciaga has not met that burden, and the district court did not err in granting summary judgment on Burciaga's FMLA discrimination claim.

For these reasons, we affirm the judgment of the district court.
_____