# United States Court of Appeals
## For the Eighth Circuit

—————————————————

No. 18-1588

—————————————————

Nancy Heisler

*Plaintiff - Appellant*

v.

Nationwide Mutual Insurance Company

*Defendant - Appellee*

————————

Appeal from United States District Court
for the Southern District of Iowa - Central Division

————————

Submitted: May 14, 2019
Filed: July 30, 2019

————————

Before BENTON, WOLLMAN, and GRASZ, Circuit Judges.

————————

GRASZ, Circuit Judge.

Nancy Heisler sued her employer, Nationwide Mutual Insurance Company ("Nationwide"), alleging discrimination against her on the basis of her sex and her

age. The district court[1] granted summary judgment to Nationwide, and Heisler appeals. We affirm.

## I. Background

Heisler is a Certified Public Accountant who has worked for Nationwide through its subsidiary companies in Des Moines, Iowa, since November 1985. She began in a subsidiary company that was then called Farmland Insurance. From 1986 until 2002, she worked on an hourly contract basis. In the late 1990s, when Nationwide acquired Allied Insurance ("Allied"), Nationwide moved Wendell Crosser from Allied to Farmland Insurance to become the Chief Financial Officer and Heisler's new boss. Eventually, Crosser moved back to a position at Allied and recruited Heisler to join him. Heisler started working at Allied as a special projects employee with varied hours and eventually converted to a full-time salaried position in 2003.

After Heisler joined Crosser at Nationwide's Allied division, she was gradually promoted. In April 2003, she was a "Director, Management Report Analysis" with an annual salary of $93,000. In March 2005, Nationwide promoted her to Financial Business Director. In April 2005, Nationwide promoted her to Finance Officer. In March 2008, Nationwide changed all Finance Officer positions, either demoting them to "H-band" titles or promoting them to Associate Vice President ("AVP") depending on the position. It determined that Heisler's position was an AVP position and promoted her accordingly. Her job duties did not significantly change from 2005 through 2012. Her salary, at least as of 2011, was approximately $139,700.

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa, adopting the report and recommendation of the Honorable Helen C. Adams, Chief Magistrate Judge, United States District Court for the Southern District of Iowa.

In July 2011, Heisler applied to be a vice president ("VP") of multi channel finance. Her interviewers included Crosser. At least two other individuals applied: Angie Klett and Eric Ryan. Nationwide ultimately hired Klett.

In the fall of 2011, Crosser approached Heisler about a VP job that would be open in Harleysville, Pennsylvania when Nationwide completed an acquisition there. She told Crosser she would want a significant increase in compensation in order to move because the cost of living in Harleysville (a suburb of Philadelphia) was 58% higher than the cost of living in Des Moines. In particular, she indicated she wanted an increase in her base salary from $139,700 to $220,000. Crosser discussed salary options with human resources ("HR"), but before any concrete results came from that discussion, the hiring manager hired another employee, Mark Beres, for the position.

Crosser then attempted to obtain an AVP position for Heisler in Harleysville. Nationwide eventually gave her an offer for the AVP position with a base salary of $150,879 and $15,000 in supplemental income. Heisler sent an e-mail to Crosser and Beres indicating she was disappointed the offer was so far below her request and that she would like at least $25,000 more in base salary or supplemental income before she accepted the offer. Her disappointment was motivated in part by the fact her base income in Des Moines was already set to increase to $146,688 in the near future. Crosser was upset by her response. He went to her office to angrily tell her, "[i]f you're not going to take the job, don't bother going to Harleysville," and then cancelled her planned trip to Harleysville with him. He also apparently told Beres not to respond to her e-mail and that Heisler was no longer interested in the position. Neither he nor Beres ever formally responded to her request. Crosser also complained about Heisler's e-mail to several people at Nationwide who were not involved in the hiring decisions for Harleysville.

Nationwide eventually announced it hired Keith Graham, a younger male, for the AVP position in Harleysville. Graham accepted an offer of $132,000 annual

income with no supplemental income. Beres and Graham discussed the option of Graham commuting from Ohio instead of moving to Pennsylvania, but Graham had to accept the offer without any commitment from Beres on the commuting option.

After Crosser's hostile reaction to Heisler's compensation request, her relationship with him declined. She approached him about future career opportunities. He offered to pay for an executive coach to help improve her career, but Nationwide ultimately refused to pay for Heisler's preferred coach who was not on Nationwide HR's list of approved coaches. Crosser also offered the feedback that Heisler was "too direct" and "lacked political savvy." He recounted an example of her asking the CFO about challenging one of the CEO's decisions not to use comparisons to competitors.[2] Heisler believed (and argues here) that this feedback about her communication was merely code for her being a female who declined Crosser's offer.

In early 2012, Heisler's attempts to obtain new positions within the company also failed. She applied for a VP level position and three AVP level positions, including an AVP level position where Crosser was the hiring manager. She was rejected from several of them and had to withdraw from the remaining ones due to an intervening family issue.

In May 2012, the company effectively demoted Heisler. It rearranged the reporting structure in Allied to make several of Crosser's subordinates, including Heisler, report to Ryan. Then, Nationwide's HR department reassessed Heisler's position and reclassified her as a Senior Director, not an AVP. The new classification had an effective date of July 1, 2013. Heisler complained to Connie McVey, an HR

_____

[2]The incident occurred in a meeting where Heisler was pitching a study comparing Nationwide to competitors. Ryan, who was also at the meeting, agreed the remark lacked political savvy but did not think it as bad of a moment as Crosser did.

employee, about what Heisler believed was inaccurate information involved in the reclassification. HR retained the classification of Heisler's position as Senior Director.

Over the next two years, Heisler's attempts to transfer to another AVP role were unsuccessful. Between June 2012 and May 2013, Heisler inquired about several AVP roles but was discouraged from applying for various job-specific reasons. Then, she applied to four AVP positions and expressed interest in the CFO position at Nationwide's Titan division between May 2013 and fall of 2014. She was rejected from the four positions, and the Titan CFO job posting was removed shortly after she expressed interest. Crosser was the hiring manager for the Titan CFO position.

In the fall of 2014, Nationwide reorganized its Property and Casualty Finance Department and scheduled elimination of seven positions, including Heisler's Senior Director position. Nationwide encouraged displaced employees to apply for positions created by the reorganization.

In October of 2014, Heisler applied for three open AVP positions under Klett: AVP, Finance, Agency Field; AVP, Finance, Property Management & Accounting; and AVP, Product. Several managers, including the relevant supervisor Klett and two other managers who knew Heisler (Crosser and Butler) interviewed candidates for all three positions at once. They hired Peter Rothermel for the first role, Mark Dielman for the second role, and Renae French for the third role. The hired applicants were two younger males and one younger female, respectively. Heisler believed Ryan was wrongly rejected from the AVP, Finance, Agency Field role and should have been hired for that position.[3] Heisler believed she was more qualified than Dielman and French for the second and third roles. She claims all three of these rejections were discriminatory.

_____

[3]Ryan was rejected from all three positions, and he relocated to Des Moines to take a lower level Director position.

On November 1, 2014, Heisler applied to be an AVP, Staff Administration. She was rejected in favor of a younger female, and she argues this, too, was discriminatory.

On November 14, 2014, Heisler complained to HR that Nationwide was discriminating against her because of her age and gender. HR's director of the Office of Associate Relations Compliance investigated the complaints. After interviewing several people in the company, he concluded that age and gender had not played a role in the adverse actions toward Heisler.

Heisler's subsequent applications fared no better. Between the time of her complaint in November 2014 and March 5, 2015, Heisler applied for ten different roles and was apparently rejected from all ten of them. She contests three of those rejections as discriminatory. For two jobs in particular, the hiring manager's notes indicated that Crosser said Heisler "had attitude issues."

On March 5, 2015, Nationwide eliminated Heisler's senior director position. Although this was a termination date, the company placed her on unpaid administrative leave because she was under consideration for other positions.

Heisler's applications also continued during her administrative leave. She applied to be an AVP, Sales Strategy & Performance. She was not interviewed for the position. She does not challenge this denial as discriminatory.

In April 2015, Heisler applied to be a Senior Consultant, Finance. On April 21, 2015, Butler offered Heisler the Senior Consultant, Finance position. Because Heisler's previous base salary of $148,210.95 exceeded the maximum for Senior Consultants, Butler also noted in the offer letter that Heisler's salary would be adjusted to the "MRV" high for the new position after approximately one year. Ryan and two other associates also received salary reductions due to acquiring lower level positions after the reorganization.

In June 2015, Heisler filed a formal charge of discrimination with the Iowa Civil Rights Commission. No one disputes that Heisler was eventually authorized to sue on that charge.

After starting the Senior Consultant position, Heisler continued applying for more senior roles. In July 2015, Heisler applied to be an AVP, Finance. The hiring manager was Klett. When asked for an example of a time she was unsuccessful and what she would do differently, Heisler used her previous three rejections from Klett as an example. Klett selected Dielman. Heisler alleges this rejection was discriminatory.

In October 2015, Heisler sued Nationwide in federal court, alleging seven counts: (1) discrimination based on sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2; (2) discrimination based on age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634; (3) unequal pay, in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d); (4) retaliation, in violation of Title VII, 42 U.S.C. § 2000e-3(a); (5) retaliation, in violation of the ADEA, 29 U.S.C. § 623(d); (6) retaliation, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215; and (7) sex discrimination and unequal pay, in violation of the Iowa Civil Rights Act ("ICRA"), Iowa Code § 216.1–216.21.

In December 2015, Heisler applied to be an AVP, Staff Administration. Nationwide hired a younger female. Heisler argues this rejection was discriminatory.

In February 2016, Heisler had a performance review with Dielman, her direct supervisor. He rated her as a high three out of five, which was considered "Successful." She responded with an e-mail over four pages in length, single-spaced, debating all of the feedback in the report.

In June 2016, Heisler amended her complaint with leave of court to add the new relevant facts, including alleging the denial of the December 2015 job was discriminatory. She apparently never obtained another position besides the Senior Consultant position.

In April 2017, Nationwide moved for summary judgment on all claims. A magistrate judge recommended granting the motion. Heisler filed objections. She also moved to supplement the record. The district court overruled the objections, denied the motion to supplement the record, and granted summary judgment. Heisler timely appealed.

## II. Analysis

Because many of Heisler's arguments concern facts applicable to multiple claims, we first review (1) the relevant law and statutes of limitations. We then address (2) her arguments regarding the summary judgment standard collectively, followed by (3) her individual arguments regarding protected conduct for her retaliation claim, (4) the burden of proof for demonstrating pretext in a discrimination claim, and (5) her motion to supplement the record in the district court.

### A. Relevant Law

To establish discrimination on the basis of sex under Title VII or discrimination on the basis of sex or age under ICRA, a plaintiff needs to show that her employer discriminated against her with respect to the terms and conditions of employment on the basis of the relevant impermissible category. *See* 42 U.S.C. § 2000e-2; Iowa Code § 216.6(1)(a). In cases such as this one where no direct evidence of discrimination exists, the *McDonnell Douglas* framework for indirect evidence applies. *See Grant v. City of Blytheville*, 841 F.3d 767, 773 (8th Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). First, the plaintiff has the

burden of making a prima facie case of discrimination. *Id.* If she makes a prima facie case, the employer has the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer meets this burden, then the plaintiff has the burden to produce evidence that the proffered nondiscriminatory reason is a pretext for discrimination. *Id.* Despite this shifting of the burden of production, the "plaintiff at all times bears the 'ultimate burden of persuasion.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). Nationwide conceded that Heisler established a prima facie case of sex and age discrimination, but argued it had legitimate non-discriminatory reasons for its adverse acts against her.

To establish retaliation under Title VII or the FLSA, Heisler must show "(1) . . . she engaged in statutorily protected activity; (2) an adverse employment action was taken against . . . her; and (3) a causal connection exists between the two events." *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006) (quoting *Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 739 (8th Cir. 2005)); *see also Montgomery v. Havner*, 700 F.3d 1146, 1148–49 (8th Cir. 2012) (applying the same test to the FLSA). Nationwide did not concede a prima facie case on the retaliation claims. These claims are also considered under the shifting burden of production of the *McDonnell Douglas* framework. *See Green*, 459 F.3d at 914; *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034 (8th Cir. 2005).

The ADEA has similar elements to Title VII for any claim for discrimination or retaliation. *Grant*, 841 F.3d at 773. While we have applied *McDonnell Douglas* to ADEA claims when addressing them along with other discrimination claims, it is unclear whether *McDonnell Douglas* technically applies to the ADEA because the ADEA has a "but-for" causation standard rather than the mixed motives standard used in other statutes. *See Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1083 (8th Cir. 2013) (noting the different standards). It is clear, though, that a plaintiff who fails to meet the lower standard of Title VII or ICRA necessarily fails to meet the ADEA's

standard as well.  *See id.*  Accordingly, we discuss the claims first in light of the *McDonnell Douglas* framework and need not reach the ADEA's separate burden if no claim survives *McDonnell Douglas*.

"To establish a claim of sex-based wage discrimination under the Equal Pay Act or [ICRA] 'a plaintiff must show by a preponderance of the evidence that (1) she was paid less than a male employed in the same establishment, (2) for equal work on jobs requiring equal skill, effort, and responsibility, (3) which were performed under similar working conditions.'" *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 421–22 (8th Cir. 2017) (footnote omitted) (quoting *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002)).

We also note the statutes of limitations prevent Heisler from asserting some relevant conduct as actionable conduct.  Under Title VII, the ADEA, and ICRA, Heisler had to file her charge within 300 days of the alleged unlawful employment practice.  42 U.S.C. 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B); Iowa Code § 216.15(13).  Because she filed her formal charge in Iowa in June 2015, she agreed her actionable claims under those statutes were limited to actions on or after August 10, 2014.  Under the FLSA or the EPA, Heisler had to file her claims of pay discrimination within two years of alleged disparate pay or within three years of alleged willful disparate pay.  29 U.S.C. § 255(a).  Because she filed her complaint on October 8, 2015, and because she does not argue willfulness, her actionable claims under the EPA are limited to disparate pay on or after October 8, 2013.  No one appears to dispute the timeliness of any potential retaliation claim under the FLSA.  Thus, while we discuss facts outside of these dates to examine Nationwide's motives in later actions, only the actions within these time constraints are cognizable claims.

In light of the statutes of limitations, Heisler challenges only timely acts as part of her claims for discrimination or retaliation.  She particularly asserts discriminatory action in rejections from nine jobs: the three positions from her October 2014

interview; the AVP, Staff Administration position in early November 2014; a director and a consultant position in November 2014, a consultant job in February 2015, an AVP job reporting to Klett that she interviewed for in July 2015, and an AVP position in December 2015. She also asserts that her performance review in 2016 was an adverse employment action. She similarly limits her EPA claim data to timely information.

## B. Arguments Regarding the Summary Judgment Standard

Four of Heisler's issues on appeal essentially contest whether the district court violated the summary judgment standard. Because she raises many arguments under each heading, we address the most significant arguments first. "This court reviews de novo a grant of summary judgment." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

At the outset, viewing the record in Heisler's favor produces one observation necessary to reviewing all of her arguments: the record indicates any pretext in Nationwide's proffered reasons for adverse acts was masking the fact one of its supervisors, Crosser, disliked his employees being direct. One can understand Heisler's sense of unreasonable treatment stemming from Crosser's overreaction to Heisler's e-mail about the Harleysville job. Nevertheless, there is no evidence in the record suggesting that age or gender motivated Crosser. Ryan testified that he, too, had been criticized for being too direct. He suffered a demotion, like Heisler, even though he was more agreeable about moving between offices to take different positions. Nationwide's treatment of a younger male like Ryan is the clearest example of a record reflecting a displeased manager rather than discrimination based on age or gender. Hostile treatment by a manager based on employee conduct and not motivated by any protected characteristic or conduct, even if unreasonable, does not amount to a legally actionable type of discrimination.

-11-

Several of Heisler's main arguments address the individual job rejections she contends were discriminatory. Her more particular arguments still fail to show anything more than speculation is possible based on this summary judgment record.

One of Heisler's principal arguments on appeal concerns whether the district court inferred facts in Nationwide's favor when discussing her rejection from three positions after an interview on October 11, 2014, with Crosser and others. Our review of the record supports the district court's description of Nationwide's proffered reasons for rejection, and it appears Heisler's true grievance is the district court's conclusion about whether she could show those statements were pretext.

We agree with the district court that Heisler cannot meet her burden for these three positions on this record. "[T]o support a finding of pretext, the applicant must show that [the employer] hired a *less* qualified applicant." *Torgerson*, 643 F.3d at 1049 (first alteration in original) (quoting *Kincaid v. City of Omaha*, 378 F.3d 799, 805 (8th Cir. 2004)). She makes a plausible argument that she was more qualified for the first position than was Rothermel, but even if that were true, she undermined that argument by her admission that Ryan (a younger male) was the most qualified for the same position. On the other two positions, she introduced too little evidence to prove her qualifications. There is at least a potential she was the most qualified candidate for the third position because she noted, and Nationwide apparently does not dispute, that she had more AVP-level experience than French. The record seems to indicate Ryan had as much AVP-level experience as Heisler, though, which would undermine her argument that the pretext here was pretext for age or gender discrimination. Instead, it again appears more likely that Crosser was influencing the hiring process against certain applicants. Thus, the district court was correct that Heisler failed to meet her burden of proof on these positions because she introduced sparse evidence and because Ryan's similar rejection from all three positions undercuts any allegation of age or gender bias.

Heisler next argues the district court erred by finding it was immaterial whether she was interviewed for the AVP, Staff Administration position in early November 2014. The district court concluded the dispute *was* material to whether Nationwide offered a false reason for rejecting her (failing an initial interview), but it also concluded there was no indication any false statement was pretext for age or gender bias. Regardless of whether Heisler was interviewed, it is undisputed Heisler was not in the final round of interviews. Heisler did not offer evidence to show all of the final candidates were younger or less qualified, nor did she offer any other basis to conclude her elimination from consideration was due to age or gender. Thus, even if the interview issue were genuinely relevant, there is no material dispute about whether Heisler's rejection was based on age or gender.

Heisler argues the district court errantly accepted Nationwide's stated reasons for rejecting her for the Financial Business Director and Senior Consultant positions in November 2014. Three people, including Crosser, told the hiring manager not to hire her. In view of that fact, her argument again fails because she cannot show Crosser's actions against her were based on age or gender, and Crosser's advice is a nondiscriminatory reason for the hiring manager to reject her for both positions.

Heisler argues the district court erred by stating that she was rejected from an AVP, Finance position in July 2015 due to using dated examples in interview questions. The district court also noted that Klett rejected Heisler for citing past rejections from Klett in response to Klett's question about a time she was unsuccessful. Even if Heisler did not use old work examples in response to interview questions, the district court cited sufficient other evidence to show that the interview went poorly, and Heisler did not submit any contrary evidence. Thus, any error by the district court here was not reversible error.

Heisler argues the district court erred when it found the mediocre 2015 performance evaluation given in 2016 was not an adverse employment action. The

district court alternatively found that, even if the evaluation were an adverse act, there is no evidence the evaluation was motivated by age or gender discrimination. Because Heisler does not challenge that conclusion, we affirm on the unchallenged ground.

Heisler raises no arguments on appeal regarding the two remaining rejections she argued were discriminatory. Thus, we do not address those positions.

Heisler's arguments regarding her remaining discrimination claims based on pay disparity are waived. She makes four pay-related arguments in the brief, separately arguing about four potential comparators. She waived her claim regarding three of them in the summary judgment briefing, and she previously conceded the fourth was not a valid comparator. Thus, none of those arguments are cognizable on appeal.

Beyond those main issues, Heisler makes a number of meritless arguments. Several mischaracterize the district court's order. Others are foreclosed by her own admissions and waivers. A few arguments do not concern anything prejudicial to her claim. We are unpersuaded by any of them.

Heisler finally tries to survive summary judgment through three arguments that aggregate her various allegations. First, she argues the district court improperly considered each event "in a vacuum" rather than examining a pattern of discrimination. She cites two Eighth Circuit cases about aggregating adverse acts to suggest the court should find an aggregate pattern of discrimination. *See Phillips v. Collings*, 256 F.3d 843, 849 (8th Cir. 2001); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997). Neither cited case is on point because there is no dispute that adverse acts occurred here, but instead there is a dispute about whether adverse acts were motivated by age or gender. No case supports aggregating instances of *possible* discrimination to establish *probable* discrimination. Second, she argues she should

-14-

have been allowed to use the "cats' paw" theory of liability throughout the case by showing that adverse acts were motivated by Crosser even if the final decision maker was someone other than Crosser. The district court's order does not reject her theory of Crosser's animus, though, except on whether Crosser was motivated by age or gender. She presents no other evidence or argument here about his motivations. Finally, she argues that a case with a complex factual pattern like this one is inappropriate for summary judgment, but her only citation is to a pre-*Celotex* case in this circuit that does not accurately reflect the current standard for summary judgment. *See, e.g.*, *Torgerson*, 643 F.3d at 1042 (providing the current standard for summary judgment); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole."). Thus, we see no error in the district court's handling of these cumulative issues.

After reviewing all of Heisler's arguments about compliance with the summary judgment standard, we see no material errors in the district court's application of the summary judgment standard.

## C. Protected Conduct

Heisler argues her e-mail to Connie McVey in HR was protected conduct and that, as a result, her retaliation claims date back to 2013. Opposing a company practice is only protected conduct supporting a retaliation claim if the plaintiff "had a 'good faith, reasonable belief that the underlying challenged conduct [was unlawful].'" *Brannum v. Mo. Dep't of Corr.*, 518 F.3d 542, 547 (8th Cir. 2008) (quoting *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007)). The e-mail in evidence shows that Heisler complained to McVey about her managers misrepresenting her job role and unfairly demoting her to senior director. The message asserts an inaccurate portrayal of her role in the company, not discriminatory conduct. She did not tell McVey of any *unlawful* employment practice that would

support retaliation, nor could Heisler have *reasonably* believed the inaccurate portrayal was unlawful. Thus, the district court was correct that the statements to McVey were not protected conduct.

## D. Standard of Proof for Pretext

Heisler argues that the district court imposed a heightened standard for finding pretext. The district court's one imposition of a higher standard was just an observation that Heisler had to show illegal discrimination was a "but-for" cause to satisfy the ADEA's stricter standard for age discrimination. Although Title VII and ICRA allowed mixed motives in the pretext analysis, the ADEA does not. *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 514 (8th Cir. 2011); *see Grant*, 841 F.3d at 773 (applying the mixed motives analysis of *McDonnell Douglas* to Title VII). Thus, the ADEA standard is a heightened standard for pretext, but it is an appropriate one for her ADEA claims.

Beyond the ADEA claims, we see no evidence the district court imposed a heightened standard of pretext. As explained above, Heisler might have been more qualified than the candidates hired for the three positions in October 2014, but we lack sufficient information in this record to reach that conclusion. Her repeated uncited references in her briefs to her experience only confirm the record lacks the needed evidence. She is correct that one method of proving pretext is showing no basis in fact for Nationwide's purported motives. *See Torgerson*, 643 F.3d at 1047. But there is evidence of awkward interviews and some unsavvy conduct, which is at least an arguable basis for Nationwide's purported motives. She needed to use the qualifications comparison evidence to prove pretext, and she did not introduce enough evidence to meet her burden in that way.

Accordingly, we affirm the district court's judgment that Heisler failed to meet her burden of production to show pretext.

### E.  Motion to Supplement the Record

Heisler argues the district court erred in not granting her motion to supplement the record.  Both statute and the Federal Rules provide that a district judge *may* receive further evidence when reviewing a magistrate judge's order.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  Heisler was belatedly trying to add evidence she should have introduced six months earlier.  Her realization after reading the magistrate judge's recommendation that she had failed to introduce all of the evidence she needed to survive summary judgment is not a particularly persuasive ground for convincing a district court to accept new evidence.  The district court was free to accept further evidence, but it was under no obligation to permit a party to fix its own errors in compiling the summary judgment record.

### III.  Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____