NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0012n.06
Filed: January 5, 2007

No. 06-1017

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Bruce D. Plumb, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| John E. Potter, Postmaster General, United | ) | EASTERN DISTRICT OF MICHIGAN |
| States Postal Service, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: CLAY, ROGERS, and SUTTON, Circuit Judges.

ROGERS, Circuit Judge. Plaintiff-Appellant Bruce D. Plumb, a white male, appeals the

district court's order granting summary judgment to Defendant-Appellee John E. Potter, Postmaster

General, United States Postal Service ("USPS") on Plumb's Title VII sex discrimination and

retaliation claims. Plumb alleges that the USPS discriminated against him when Deborah Jarvi, a

female supervisor, denied him a promotion, choosing Nancy Esparza, a female, instead for that

position. Plumb further argues that this denial of a promotion constituted retaliation for an EEO race

discrimination claim that he filed (and that the parties settled) approximately eight years prior to the

time Plumb was denied the promotion. After the USPS moved for summary judgment, the district

court held that Plumb did not establish a prima facie case of sex discrimination, and in the

alternative, that Plumb did not demonstrate that the USPS's reasons for not promoting him were

pretext. The district court also held that Plumb failed to establish a prima facie case of retaliation because Plumb did not show that his denial of the promotion was causally connected to his earlier EEO complaint.

We affirm the order granting summary judgment to the USPS. Assuming Plumb has established a prima facie case of sex discrimination, he has not shown pretext. Also, the district court correctly decided that Plumb did not demonstrate a "causal connection" necessary to make out a prima facie case of retaliation.

**Background**

In May of 1993, Bruce D. Plumb, then the Manager of Vehicle Maintenance at the Dearborn, Michigan Vehicle Maintenance Facility ("VMF"), was shot while at work by a USPS employee that he supervised. Plumb alleges that, when he returned to work a few days after the shooting, Detroit District Manager Vernita Martin placed him on worker's compensation against his will. The USPS alleges that Plumb's return to work "was met by strong resistance from those employees who did not like his management style, some of whom cast blame on [Plumb] personally for the shooting incident." Plumb strenuously objects to the USPS's "blaming" him for the shooting, and notes that Gregory Gorski, the employee upon whose deposition testimony the USPS relies in making this claim, also stated that he thought that the union had used the postal shooting as "a tool, leverage" and that he thought the shooting would have occurred even if Plumb were not the gunman's supervisor. Nevertheless, management created a new position for Plumb—Vehicle Maintenance

Specialist—which was a non-managerial position at pay grade EAS-19.[1]

Plumb filed an EEO complaint alleging race discrimination. As part of a settlement, the USPS agreed not to eliminate Plumb's current job as long as he was working in it, and Plumb agreed that he would "not seek any managerial or supervisory position at the Dearborn VMF or the Dearborn Post Office." The USPS does not allege that the promotion at the center of this lawsuit fell within the scope of the Settlement Agreement. Plumb has worked as Vehicle Management Specialist at the Detroit VMF through the time of this lawsuit.

On September 12, 2000, the USPS posted a vacancy announcement for Manager of Vehicle Maintenance, an EAS-20 position at the Detroit VMF. Deborah Jarvi, as Manager of Operations Programs Support, was responsible for hiring the Manager of Vehicle Maintenance, and was also Plumb's supervisor. Plumb and another male USPS employee, Fred Carmichael, applied for the position.

On December 7, 2000, Jarvi interviewed both Plumb and Carmichael. Although Jarvi ranked Carmichael as the better applicant, Jarvi decided to repost the position "to get a wider selection, a wider pool of candidates," including candidates from outside of the Detroit area.

---

[1]The record is not clear on when the USPS created this position for Plumb—before, or after, the EEO suit (discussed below) was settled. Plumb's deposition testimony suggests that the USPS did not create this position until after he settled the EEO suit. But the Settlement Agreement itself implies that the Vehicle Maintenance Specialist position already existed prior to the settlement. Nonetheless, the chronology of the creation of the position and the EEO suit settlement is not material to this lawsuit.

On August 28, 2001, the USPS posted nationwide a vacancy announcement for the position, but indicated that previous candidates did not need to reapply. Four applicants, in addition to Plumb and Carmichael, applied. The four new applicants included two applicants from outside of the Detroit area and Nancy P. Esparza, the woman to whom Jarvi would eventually award the position. No interviews were conducted after this reposting because the USPS Headquarters decided to repost the position to allow employees displaced by USPS office closings an opportunity to apply. The six applicants were notified that they would be required to reapply.

On November 28, 2001, the USPS posted a third vacancy announcement for the Manager of Vehicle Maintenance position. Only Plumb, Carmichael, and Esparza applied. Each of the three applicants was or had been detailed into the Manger of Detroit Vehicle Maintenance position—i.e., temporarily assigned to the position.

On January 9, 2002, Jarvi interviewed each candidate. Lee Ward, a male USPS human resources employee, observed the interviews "to ensure that [interview] procedures were followed correctly." Ward was not involved in the decision-making process, but did note that Esparza and Carmichael were more "engaging" than Plumb and that Plumb did not provide "follow-through on a lot of the questions . . . as complete[ly] as the others."

On January 25, 2002, Jarvi recommended that Esparza be promoted to Manager of Vehicle Maintenance. On January 30, Jarvi's recommendation was approved by John Talick, Manager of the Detroit District. Jarvi wrote in her recommendation form that although Plumb and Carmichael

had "extensive backgrounds in VMF operations as they pertain to technical skills, neither candidate . . . demonstrated strong managerial skills." On the other hand, Jarvi wrote that "Esparza has some technical background in VMF operations and an extensive managerial background." Jarvi also justified her recommendation by noting that Esparza interviewed better, gave better answers to interview questions, and had performed better when detailed into the position.

On February 7, 2002, Plumb requested an appointment with a USPS Dispute Resolution Specialist for EEO counseling, and a few days later filed a pre-complaint counseling form indicating his belief that, by failing to promote him, Jarvi discriminated against him on the basis of sex and age, and retaliated against him for his prior EEO activity. On May 9, 2002, Plumb filed an EEO complaint, and in May of 2004, the USPS issued a final agency decision closing the case with a finding of no discrimination or retaliation.

On July 30, 2004, Plumb filed this lawsuit against the USPS in the United States District Court for the Eastern District of Michigan, bringing claims of sex discrimination, age discrimination, and retaliation, in violation of state and federal law. Plumb dropped the state law claims in his first amended complaint, and he later agreed to dismiss the age discrimination claim. On August 15, 2005, the USPS moved for summary judgment.

The district court granted the USPS's motion and ordered summary judgment in its favor on both the sex discrimination and retaliation claims. With respect to Plumb's sex discrimination claim, the district court first held that Plumb's purported direct evidence of discrimination—a comment

made by Jarvi saying that the VMF needed more diversity—did not in fact constitute direct evidence because a trier of fact would need to make inferential steps in order to conclude that Jarvi discriminated against Plumb on the basis of his sex. Second, the district court held that Plumb did not establish a prima facie case of sex discrimination because Plumb was not similarly-situated to Esparza with respect to managerial experience. In the alternative, the district court held that even if Plumb had established a prima facie case, the USPS articulated a legitimate, nondiscriminatory reason for choosing Esparza over Plumb: Jarvi evaluated Esparza as the superior candidate "based on her application, her performance as the acting Manager of Detroit Vehicle Maintenance, and the strength of her interview." The district court further held that none of Plumb's evidence—that Jarvi made the "diversity" comment, that Jarvi had a better relationship with female employees, that Jarvi was going through a difficult divorce, that he received inferior office furniture, that he claimed to be more qualified than Esparza, that Jarvi reposted the position and that the position remained vacant for a long time, that Jarvi violated USPS procedures in selecting Esparza, and that Esparza performed poorly once in the job—demonstrated pretext.

Finally, the district court held that Plumb did not establish a prima facie case of retaliation because he did not show a causal connection between his prior EEO complaint eight years earlier and Jarvi's selection of Esparza over him for the Manager of Detroit Vehicle Maintenance position. The court also held that, assuming Plumb did establish a prima facie case, he did not rebut as pretext the USPS's legitimate, nonretaliatory reasons for choosing Esparza over Plumb, for the same reasons given with respect to Plumb's sex discrimination claim.

On December 22, 2005, Plumb filed a timely notice of appeal.

**Standard of Review**

This court reviews *de novo* the district court's order granting summary judgment. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006). This court may uphold the grant of a motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). Summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to Plumb's evidence, we must draw all "justifiable inferences" in his favor. *See id.* at 255.

**Discussion**

Plumb cannot prevail on his sex discrimination and retaliation claims. Therefore, the district court correctly granted the USPS's motion for summary judgment.

**1.     Title VII Sex Discrimination**

Plumb has not established a case of sex discrimination, and therefore, the district court correctly granted summary judgment to the USPS. Title VII prohibits the USPS from failing to promote an employee because of his sex. 42 U.S.C. § 2000e-16(a) ("All personnel actions affecting employees or applicants for employment . . . in the United States Postal Service . . . shall be made

free from any discrimination based on . . . sex."); *see Harper v. Frank*, 985 F.2d 285, 287 (6th Cir.

1993); *see also* 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an

employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's . . . sex.").

Plumb can maintain a sex discrimination claim by producing either direct or circumstantial evidence

of discrimination. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 238 (6th Cir. 2005).

### a.     Direct Evidence

Plumb does not successfully present direct evidence of sex discrimination.   "[D]irect

evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination

was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare

Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).  Plumb argues that Jarvi made a comment

along the lines of "that's what we need in the VMF, a little more diversity," JA 126 (Jarvi Dep. at

88); JA 163 (Plumb Dep. at 66), during a September 2001 meeting, in response to learning that an

African-American female had received a position within the VMF.  Plumb argues that Jarvi's

comment is direct evidence of sex discrimination.  However, as the district court noted, even if a jury

were to believe Plumb's evidence, the jury would still need to make two inferences in order to

conclude that Jarvi discriminated against Plumb on the basis of his sex:  "First, the trier of fact must

infer that Jarvi's personal preference for female employees causes her to generally discriminate

against males in violation of federal law.  Second, the trier of fact must infer that this general

tendency caused her to discriminate against [Plumb]." *Plumb v. Potter*, No. Civ. 04-72902, 2005

WL 2739328, at *3 (E.D. Mich. Oct. 24, 2005).  In other words, a jury could find that Jarvi believed

that it was good to have more women working at the USPS, yet still conclude that Jarvi did not let that personal belief interfere with her decision whether or not to promote a woman over Plumb. Such necessary inferences remove this comment from the realm of direct evidence. *See White*, 429 F.3d at 239 (concluding that no direct evidence of discrimination where even if a jury were to believe an employer's comment that he wanted a "grass roots guy" for an open position, a conclusion of discrimination was not compelled). Thus, Jarvi's comment does not constitute direct evidence of sex discrimination.

### b.      Indirect Evidence

Plumb's reliance on indirect or circumstantial evidence of sex discrimination similarly is insufficient to withstand summary judgment. Because Plumb relies on indirect evidence of discrimination, we must traverse the *McDonnell Douglas* three-part burden-shifting test. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973). First, Plumb must establish a prima facie case of sex discrimination. *See id.* at 802; *White*, 429 F.3d at 240. Second, if Plumb successfully establishes his prima facie case, the burden shifts to the USPS to proffer a legitimate, nondiscriminatory reason for failing to promote Plumb. *See McDonnell Douglas*, 411 U.S. at 802. Finally, if the USPS is successful, the burden shifts back to Plumb to show that the USPS's proffered reason is a pretext for discrimination. *See id.* at 804; *White*, 429 F.3d at 245.

### i.      Prima Facie Case

Because Plumb has not shown sufficient evidence of pretext, it is not necessary for us to

resolve the preliminary question of whether Plumb established a prima facie case of sex discrimination in the first place. The district court held that Plumb had not, but that conclusion is at least questionable. To establish a prima facie case of sex discrimination, Plumb must show that "(1) [he] is a member of a protected class; (2) [he] applied for and was qualified for a promotion; (3) [he] was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time [Plumb's] request for the promotion was denied." *White*, 429 F.3d at 240. However, because Plumb is not a member of a protected class, this is a so-called "reverse-discrimination" case and instead of the first requirement above, Plumb must show that "background circumstances support the suspicion that the [USPS] is that unusual employer who discriminates against the majority" and that the USPS "treated differently employees who were similarly situated but not members of the protected group." *Yeager v. Gen. Motors Corp.*, 265 F.3d 389, 397 (6th Cir. 2001) (internal quotations omitted).

The USPS concedes that Plumb has satisfied the first three requirements. Plumb also arguably satisfied the fourth element of the prima facie case—Esparza was an individual of similar qualifications who received the promotion that Plumb was denied. As recognized by Jarvi, both Plumb and Esparza had decades of experience at the USPS. JA 284 (28 years for Esparza; 34 years for Plumb). At the time Plumb was denied the promotion, he had a position at grade EAS-19, whereas Esparza held a position at the lower grade EAS-16. Both Plumb and Esparza had thirteen years of managerial experience. In addition, according to Jarvi, Plumb had an "extensive background[] in VMF operations [with respect] to technical skills" whereas Esparza merely had

"some technical background in VMF operations."  JA 285.

Despite this evidence, the district court concluded that Plumb was not similarly situated to Esparza because Esparza's managerial experience was current, while Plumb's managerial experience ended in 1990.  In effect, the district court relied on one of Jarvi's reasons for choosing Esparza over Plumb to hold that Plumb was unable to establish a prima facie case.  Such a comparison risks "conflating the first (prima facie case) and second (articulation of a legitimate non-discriminatory reason) steps in the *McDonnell-Douglas* analysis."  *White*, 429 F.3d at 242 (emphasis omitted).  In *White*, this court held that employees were not similarly situated where one employee had seventeen years of security experience, vast investigation experience, and vast managerial experience; and the other had seven years of security experience, minimal investigation experience, and minimal managerial experience.  429 F.3d at 243-44.  Here, the differences between Plumb and Esparza are much smaller, and thus arguably sufficient to show that Plumb and Esparza were similarly situated.  In addition, in its motion for summary judgment, the USPS conceded that Plumb established a prima facie case of discrimination, including this similarly-situated element.  JA 63 (Motion for Summary Judgment at 16 n.6).  We therefore do not rely, as the district court did in the alternative, on the absence of a prima facie case of sex discrimination.

ii.     *Legitimate, Nondiscriminatory Reason & Pretext*

Assuming that Plumb established a prima facie case, he failed to rebut as pretext the USPS's legitimate, nondiscriminatory reason for denying him the promotion.  The USPS articulated a

legitimate, nondiscriminatory reason for denying Plumb the promotion because Jarvi determined that Esparza interviewed better than Plumb, "was able to verbally express how she manages her employees on a day to day basis" (while, in contrast, Jarvi noted that Plumb "was unable to articulate verbally his managerial abilities"), and performed better than Plumb when temporarily detailed into the Manager of Vehicle Maintenance position. Later, Jarvi also noted that "Plumb was not selected due to the fact [that] he had not been in any other managerial position since his assignment to his current position." JA 300 (EEO Investigative Aff.).

Plumb puts forward a number of arguments why the USPS's reason was a pretext for discrimination. Plumb can show pretext "(1) by showing that the proffered reason had no basis in fact; (2) by showing that the proffered reason did not actually motivate the [USPS's] conduct, or (3) by showing that the proffered reason was insufficient to warrant the challenged conduct." *White*, 429 F.3d at 245. Each argument Plumb advances is legally insufficient.

First, Plumb's argument that he was more qualified than Esparza and that Jarvi ignored objective criteria is not evidence of pretext. Plumb notes that he was at a higher pay grade than Esparza (EAS-19 versus EAS-16), that he had more managerial experience than Esparza,[2] that Plumb had 14 years of "supervision experience" in the VMF whereas Esparza had never held a permanent managerial position in the VMF, and that Plumb's job application described "two and a

---

[2]In his brief, Plumb states that he had twenty years of managerial experience, but the record supports only that Plumb had thirteen years of managerial experience. Plumb appears to count his current position as Vehicle Maintenance Specialist, which is a non-managerial position.

half pages of education and training, most of which is VMF related," while Esparza's application

listed "one page of work-related education and training, none of it VMF related." Although an

employee might possibly show that his qualifications for a position were so objectively superior to

the qualifications of the individual that the employer chose for that position such that a reasonable

juror could infer pretext, *see, e.g.*, *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180-81 (7th Cir. 2002);

*Toledo v. Jackson*, No. 05-6938, 2006 WL 3390332, at *2 n.4 (6th Cir. Nov. 20, 2006)

(unpublished), this is not such a case. As discussed above, the qualifications of Plumb and Esparza

were comparable, and Jarvi chose Esparza based on her better interview and her superior

performance during the temporary detail.[3] Plumb's subjective belief that he was more qualified than

Esparza is insufficient to demonstrate pretext. *See Briggs v. Potter*, 463 F.3d 507, 516-17 (6th Cir.

2006).

Second, Plumb argues that Jarvi's failure to follow certain USPS policies during the hiring

process shows pretext. Plumb refers to two policies with which Jarvi did not comply: (1) a goal of

filling vacant positions within 16 days of a vacancy announcement; and (2) a policy of not hiring an

employee for a position if that employee has filled that position temporarily for more than 120 days.

---

[3]Plumb attacks the USPS's proffered reason because it is "subjective, subject to the creative whims of the interviewer." Although this court recognizes that "subjective reasons provide 'ready mechanisms for discrimination,'" *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 461 (6th Cir. 2004) (quoting *Grano v. Dep't of Dev. of City of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983)), here, these concerns are lessened because Ward, a male human resources employee who observed each of the interviews, agreed that Esparza's performance during her interview was superior to Plumb's performance during his.

Plumb's argument with respect to the 16-day goal fails because this was not a formal policy, but simply a goal—one that simply was not attained during the hiring for this position. JA 463 ("The District's *goal* is to finalize EAS selections within 16 days from the date of this letter." (emphasis added)). Plumb's argument with respect to the 120-day rule fails because Plumb has not shown how any deviation from this rule demonstrates pretext. *See Briggs*, 463 F.3d at 516 ("The Postal Service has offered reasonable explanations for any minor deviations from established procedure . . . , and Briggs has not explained how any of these alleged procedural irregularities prejudiced him in the selection process or indicate 'any dishonesty or bad faith' on behalf of the Postal Service." (quoting *Williams v. Columbus Metro. Hous. Auth.*, 90 Fed.Appx. 870, 876 (6th Cir. 2004))). Esparza initially applied for the promotion before she was in the temporary detail for 120 days, but because the position was reposted, Esparza remained in the temporary position for more than 120 days. The Human Resources Department waived the 120-day rule requirement in this case, and Plumb does not show how this process demonstrates pretext.

Third, Plumb argues that Esparza's poor performance after obtaining the Manager position demonstrates pretext. Plumb argues that Esparza failed five out of six "model audits" (i.e., performance evaluations). Plumb does not refer to any case law suggesting that an employee's poor performance after obtaining a promotion demonstrates that the decision to promote that employee was pretext. At most, Plumb's evidence shows that Jarvi and the USPS may have made a bad business decision by hiring Esparza instead of Plumb. But this does not demonstrate that Jarvi's reasons for hiring Esparza were pretext for unlawful discrimination.

Fourth, Jarvi's comment that the VMF needed more diversity (discussed above) is not evidence of pretext. This court has held that isolated or ambiguous remarks are not evidence of pretext. *See, e.g.*, *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025-26 (6th Cir. 1993). Here, although Jarvi's comment allegedly was made during the general time frame of the selection process, it was made several months before the candidates were interviewed and a decision was made. Also, the alleged comment was too ambiguous to establish an inference of discrimination. *See id.* at 1026. A reasonable jury could not conclude that Jarvi's "diversity" comment, made months before the decision to hire Esparza, proves that Jarvi chose to promote Esparza rather than Plumb because of Plumb's sex, instead of on the basis of the nondiscriminatory reasons Jarvi gave for the decision.

Finally, Plumb makes a number of other arguments that the USPS's purported legitimate reason for choosing to promote Esparza over himself was pretextual.[4] However, none of Plumb's arguments show that the USPS's "proffered reason had no basis in fact; . . . did not actually motivate the [USPS's] conduct, or . . . was insufficient to warrant the challenged conduct." *See White*, 429 F.3d at 245. Therefore, Plumb has not shown that the USPS's proffered reason for promoting

---

[4]Plumb points to the following evidence: (1) Jarvi excluded Plumb from meetings and training sessions; (2) Jarvi rarely communicated with Plumb and had other employees give Plumb instruction instead of doing so herself; (3) Jarvi "spoke more freely" with female subordinates than with Plumb; (4) Jarvi was going through a rough divorce; (5) Plumb was given a "hand-me-down" desk and office equipment; (6) Plumb's position was not given a pay scale upgrade, whereas all other managerial positions at the Detroit VMF received upgrades; (7) Jarvi selected Esparza and Carmichael for temporary detail in the Manager position before Plumb, even though Plumb was a higher pay grade; (8) the USPS settled a sex discrimination claim by Carmichael against Jarvi for the same incident; (9) Ward observed the interviews, which was unusual; and (10) the position was twice reposted, and Jarvi could not give a good reason for why she decided to repost the position the first time.

Esparza instead of him was a pretext for discrimination.[5]

## 2.       Title VII Retaliation

Plumb cannot maintain a claim under Title VII for retaliation because he cannot establish a prima facie case. Title VII prohibits an employer from retaliating against an employee for filing an EEO complaint. *See* 42 U.S.C. § 2000e-3(a). For a claim of retaliation under Title VII, the same *McDonnell Douglas* burden-shifting framework discussed above with respect to discrimination applies. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563-64 (6th Cir. 2004). To establish a prima facie case of retaliation, Plumb must show that "(1) [he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to [the USPS]; (3) [the USPS] thereafter took adverse employment action against [Plumb] . . . ; and (4) there was a causal connection between the protected activity and the adverse employment action." *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (emphasis omitted).

Plumb can easily satisfy the first three elements of the prima facie case. First, Plumb engaged in activity protected by Title VII when he filed his prior EEO complaint against the USPS, which the parties then settled in May of 1995. Second, both the USPS generally, and Jarvi specifically, knew of Plumb's prior EEO complaint and the resulting settlement. Third, the USPS took an adverse employment action against Plumb when it denied him the promotion to Manager of Vehicle

---

[5]Because Plumb cannot demonstrate pretext, we do not address the USPS's alternate argument that Plumb cannot show that he would have been promoted "but for" his sex because Jarvi ranked Carmichael, a male, ahead of Plumb.

Maintenance.

Plumb does not establish the final element of the prima facie case—a causal connection between his EEO complaint/settlement and the denial of the promotion. To establish a causal connection, Plumb "must produce sufficient evidence from which an inference can be drawn that the [USPS] took the adverse employment action because" of Plumb's prior EEO complaint. *Singfield*, 389 F.3d at 563. The time difference between these two incidents—eight years—is too long to permit an inference of causal connection absent some other evidence.[6] *See, e.g.*, *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000) ("[P]revious cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months.").

Plumb argues, without relying on case support, that he established a causal connection for two reasons: (1) "there is a continuity between the 1994 EEO settlement and the 2001 denial of promotion"; and (2) "there were no prior instances or opportunities for Mr. Plumb to seek promotion until 2000-2001."

Plumb's first argument is basically that management blamed him for the 1993 shooting and intended to prevent him from managing employees again in the future. But, as the district court noted, "[t]he Court's role is to determine [whether] a violation of federal law occurred, not whether

---

[6]In his Reply Brief, Plumb argues for the first time that the time difference is only six years. Regardless, six years is still too long to permit an inference of causal connection.

an employer's actions were right or wrong in an abstract moral sense." Plumb does not refer to any evidence suggesting that the USPS or Jarvi denied him the promotion because of his prior EEO activity.

Plumb's second argument is similarly without merit. Plumb argues that the eight-year time difference between his EEO activity and the promotion denial is misleading because he "never had the opportunity to test the bounds of the EEO settlement until 2000-01," and, therefore, this "creates a factual distinction unique from any case cited by [the USPS] as to time limits on causal connection." In other words, Plumb argues that because the USPS did not have an opportunity to retaliate against him sooner, the large time difference is unimportant. The time difference between an employee's exercise of protected activity and an adverse employment action that an employer takes against that employee is important not in some abstract sense, but because it may permit a jury to infer retaliation if there is a close temporal proximity. The fact that the USPS did not have an earlier opportunity to retaliate against Plumb does not affect this inference. Plumb has offered no evidence to suggest that the USPS has been lying in wait for all this time, ready to pounce at the first opportunity Plumb took to move up in the organization. Therefore, the fact that the USPS had no prior opportunity to retaliate against Plumb does not change the fact that a rational jury could not infer from the eight-year time difference that he was denied the promotion because of his prior EEO complaint and settlement.

Because Plumb has not demonstrated a causal connection between Jarvi's selection of Esparza over him for the promotion and his EEO complaint and settlement, Plumb has not

established a prima facie case of retaliation. But even assuming Plumb could establish a prima facie case, he could not satisfy the remainder of the *McDonnell Douglas* test for the reasons stated above with respect to discrimination. Therefore, the district court properly granted summary judgment to the USPS on Plumb's retaliation claim.

## Conclusion

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment to the USPS.