# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3404

_____

Deidre Parker

*Plaintiff - Appellant*

v.

United States of America, United States Department of Agriculture; Brooke L. Rollins[1]

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 21, 2024
Filed: February 28, 2025

_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Deidre Parker sued the United States Department of Agriculture (USDA) and its Secretary under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for race and gender discrimination, retaliation, constructive discharge, and the

---

[1]Secretary of Agriculture Rollins is automatically substituted for her predecessor under Federal Rule of Appellate Procedure 43(c)(2).

hostile work environment she allegedly experienced during her employment at the USDA. The district court[2] granted summary judgment in favor of the USDA on all counts, and Parker now appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Parker is a black woman who was hired as a Program Management Assistant by the Risk Management Agency (RMA) of the USDA in March 2011 at a General Schedule (GS) 7 pay grade. In this role, Parker maintained a clerical position and was responsible for providing "administrative assistance," which included managing time sheets and travel records for other employees, generating weekly activity reports, maintaining files and records, and answering the phone. Parker was never suspended or demoted, nor did she receive any pay cut, while employed with the USDA.

Prior to the circumstances giving rise to this action, Parker filed an Equal Employment Opportunity Commission (EEOC) complaint in 2013 and entered into a Settlement Agreement with the USDA, which stated that she "[r]elease[d], waive[d] and withdr[e]w . . . any and all complaints, grievances, . . . or claims, . . . whether known or unknown, that have or could be filed" against the USDA up through the "effective date" of the settlement, May 29, 2015. Thus, the events recited below all concern conduct occurring after that date.

During Parker's employment, the USDA asked RMA administrative staff to organize and clean "old paper files out of file cabinets." This task required Parker to clean out the general division cabinets used collectively by other employees. As the sole Program Management Assistant in her division, Parker was the only employee tasked with cleaning the division cabinets. It was also during this period

---

[2]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

that Parker complains she was not given any work to do, as her duties had diminished after the RMA changed its timekeeping system to allow employees to complete their own timesheets and travel records.

Because Parker's work "had started diminishing" based on the new timekeeping system, she began asking her supervisor, Ron Lundine, for daily work assignments and special projects. Parker received an opportunity to work a "grade equivalent position in the USDA Mailroom" for 60 days, but Parker rejected this offer. She requested and received a 60-day detail with the Farm Service Agency within the USDA in 2017 and a special project entailing a federal viewpoint survey in 2018. In addition to asking for special projects, Parker requested and received information about leadership programs and development opportunities within the RMA, but she never acted upon this information. Parker also inquired about transferring to another division and was informed that she would have to "compete for the position through a vacancy announcement" because she was currently a GS-7 employee and the positions were for GS-9 employees. There is no evidence Parker ever applied for such a transfer. Finally, Parker applied for three promotions during her tenure and claims the positions were all given to other less-qualified white women. Aside from the names of other employees who were allegedly promoted, Parker has no information on their qualifications or when the promotions occurred.

While seeking additional work opportunities, Parker received two letters of counseling based on her own disruptive conduct. The first, issued in 2016, concerned Parker's conduct at the Beacon Cafeteria, a dining hall in the building housing USDA offices. This letter stated that it was "not a disciplinary action" and "[would] not be placed in [Parker's] Official Personnel Folder." Parker did not receive any discipline as a result of this letter. The second letter, issued in 2018, concerned Parker's conduct towards other employees at the USDA. Parker told one employee she was going to "kick her ass" and another that she only "obtained her position . . . because she is white." Parker admitted to making these statements when confronted by Lundine. Based on this admission, the Federal Protective Service began an investigation into Parker's conduct on August 30, 2018. This investigation

was suspended on September 10, 2018, because Parker abruptly notified management that she was retiring.

Parker filed EEOC complaints in 2017 and 2018. In the 2017 complaint, Parker alleged that she was discriminated against based on her race, gender, age, and color because the USDA (1) gave her menial work assignments or no work at all; (2) failed to promote or otherwise give her development opportunities; and (3) issued the letter of counseling in 2016. She also alleged that the USDA retaliated against her for filing her original EEOC complaint that was settled in 2015. While the 2017 complaint was in mediation, Parker alleges that Lundine refused to speak with her in person for a two-week period, communicating strictly via email. Parker filed her second EEOC complaint in 2018 and brought additional race, gender, age, color, and disability discrimination claims along with one retaliation claim based on (1) Lundine refusing to speak with her in person; (2) the 2018 letter of counseling; and (3) the USDA initiating an investigation into her workplace conduct.

After exhausting her administrative remedies, Parker filed suit in federal court, alleging two disparate treatment discrimination claims on the basis of race and gender; two hostile work environment claims on the basis of race and gender; one retaliation claim based on her filing of the 2013 EEOC complaint; and one constructive discharge claim. The district court ultimately granted summary judgment in favor of the USDA on all counts. Before ruling on the merits, the court noted that it would not be considering allegations concerning actions from the settled 2013 EEOC complaint as part of this suit. The court then found that Parker failed to establish a prima facie case of discrimination or retaliation under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), because (1) most of the conduct Parker complained of did not constitute an adverse employment action and (2) there was no evidence supporting an inference of discrimination. Parker's hostile work environment claims failed for similar reasons, as Parker did not demonstrate a causal link between the USDA's conduct and her race or gender. Finally, Parker's constructive discharge claim failed because she did not prove that her workplace was intolerable or that the USDA intended for her to quit. Parker now appeals.

II.

As a threshold matter, Parker challenges the district court's decision to confine its review to events occurring after May 29, 2015, based on the Settlement Agreement. "[W]e review the admission of evidence for consideration at the summary judgment stage for an abuse of discretion." Gannon Int'l, Ltd. v. Blocker, 684 F.3d 785, 793 (8th Cir. 2012). "This deferential standard recognizes that the district court has a range of choices, and its decision will not be disturbed as long as it stays within that range, is not influenced by any mistake of law or fact, and does not reflect a clear error of judgment in balancing relevant factors." Smith v. Kilgore, 926 F.3d 479, 484 (8th Cir. 2019) (citation omitted).

The Settlement Agreement states that Parker "[r]elease[d], waive[d] and withdr[e]w . . . any and all complaints, grievances, . . . or claims, . . . whether known or unknown, that have or could be filed" against the USDA through the effective date: May 29, 2015. The district court specifically stated:

> While actions from before a settlement may be relevant to consideration of a current practice, the subjects of this lawsuit are the 2016 and 2018 complaints, and the actions alleged in those complaints will be the focus of this order.

Parker argues that pre-settlement conduct demonstrates a "continuing violation" of discrimination by the USDA. Appellant Br. 48. However, she conceded before the district court that she "waived all claims that arose prior to the execution" of the Agreement, and Parker provides no evidence, other than her bare allegation, that the Settlement Agreement demonstrates a pattern of discrimination. Parker essentially asked the district court to override the Settlement Agreement and substantively consider claims that she had relinquished as part of this suit—the district court did not abuse its discretion by declining to do so. See Bradley v. Widnall, 232 F.3d 626, 633-34 (8th Cir. 2000) (affirming grant of summary judgment when district court limited evidence to conduct occurring after settlement), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011) (en banc). Thus,

we discern no abuse of discretion by the district court in appropriately limiting the scope of Parker's claims to conduct occurring after the Settlement Agreement.

## III.

Parker next challenges the district court's grant of summary judgment in favor of the USDA. We "review[] a grant of summary judgment de novo." Kilgore, 926 F.3d at 483. "Title VII makes it unlawful for an employer . . . 'to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Muldrow v. City of St. Louis, 601 U.S. 346, 354 (2024) (quoting 42 U.S.C. § 2000e–2(a)(1)). "In cases such as this one where no direct evidence of discrimination exists, the McDonnell Douglas framework for indirect evidence applies." Heisler v. Nationwide Mut. Ins. Co., 931 F.3d 786, 794 (8th Cir. 2019). Under McDonnell Douglas, "the plaintiff has the burden of making a prima facie case of discrimination." Id. Here, Parker must demonstrate that she "(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; [and] (3) suffered an adverse employment action; . . . (4) under circumstances permitting 'an inference of discrimination.'" Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 926 (8th Cir. 2007) (alterations in original) (citations omitted), abrogated on other grounds by Cole v. Grp. Health Plan, Inc., 105 F.4th 1110 (8th Cir. 2024). Only after this prima facie showing has been made does the burden shift to the employer of "articulating a legitimate, nondiscriminatory reason for the adverse employment action." Heisler, 931 F.3d at 794.

## A.

Parker first challenges the grant of summary judgment on her disparate treatment claims. She claims that the following discrete acts constituted an adverse employment action on the basis of her race or gender: (1) the 2016 letter of counseling; (2) failure to train, transfer, or allow Parker to shadow in a position that would lead to a promotion; (3) promotion of lesser qualified individuals than Parker;

(4) the 2018 letter of counseling; (5) Lundine refusing to speak with her for a period of time; and (6) lack of work. As a threshold matter, it is undisputed that Parker is a member of a protected group, as she is a black woman. Additionally, the USDA concedes that Parker was meeting its legitimate expectations, satisfying the second prong of McDonnell Douglas. However, Parker fails to demonstrate how any of these alleged adverse employment actions[3] were made "under circumstances permitting 'an inference of discrimination.'" Clegg, 496 F.3d at 926 (citations omitted). Because Parker presented no evidence any action was taken "because of" her race or sex, all of her discrimination claims fail. 42 U.S.C. § 2000e-2(a)(1).

Take, for example, Parker's request to transfer. Parker's claims fail as she has no proof that she (1) applied for a transfer or (2) was denied a transfer based on her gender or race. See Miller v. Coca-Cola Enters., Inc., 178 F. App'x 583, 585 (8th Cir. 2006) (per curiam) (affirming summary judgment where the plaintiff provided "no evidence" that the employer's decision to promote a white coworker over him "was made because of race"). Likewise, Parker's failure-to-promote claims fail because she has not shown that "similarly situated employees, not part of the protected group, were promoted" over her. Austin v. Minn. Mining & Mfg. Co., 193 F.3d 992, 995 (8th Cir. 1999). While it is undisputed that Parker is a member of a protected class and was rated "best qualified" on her applications, Parker provides no admissible evidence about who was promoted over her; aside from Parker's speculation, there is no evidence as to who was ultimately selected for promotion and her[4] qualifications. See Brown v. Mo. State Highway Patrol, 56 F. App'x 282, 284 (8th Cir. 2003) (affirming summary judgment to employer when employee "did

---

[3]We need not address whether the acts alleged constitute adverse employment actions in light of Muldrow because Parker cannot connect any act to her membership in a protected class. See, e.g., Sallis v. Univ. of Minn., 408 F.3d 470, 476 (8th Cir. 2005) (granting summary judgment because the employee "did not produce . . . sufficient evidence for a reasonable inference of racial discrimination").

[4]All of the individuals allegedly promoted over Parker were female; therefore, Parker cannot prevail on a disparate treatment claim on the basis of gender as she is also female.

not even investigate the qualifications of the individuals who were promoted" over him or offer evidence of how the decision was made). All of the other allegations suffer from the same deficiencies: a lack of nexus between Parker's race or gender and the complained of conduct.

Without the necessary indicia or any proof that the USDA adversely acted against Parker based on her race or gender, Parker's disparate treatment claims fail as a matter of law. See, e.g., Bradley, 232 F.3d at 632 (affirming summary judgment where employee was "unable to provide any evidence, either directly or by inference, beyond her own speculation, that her alleged mistreatment was due to her protected status"). Thus, the district court did not err in granting summary judgment on Parker's disparate treatment claims.

B.

Parker next challenges the grant of summary judgment on her hostile work environment claims. To establish a hostile work environment claim, Parker must demonstrate that: "(1) she "'is a member of the class of people protected by [Title VII],'" (2) she "'was subject to unwelcome harassment,'" (3) "'the harassment resulted from [her] membership in the protected class,'" and (4) "'the harassment was severe enough to affect the terms, conditions, or privileges of [her] employment.'" Blake v. MJ Optical, Inc., 870 F.3d 820, 827 (8th Cir. 2017) (alterations in original) (citation omitted). While "[a]ny race-based harassment in the workplace is unreasonable and may, in turn, have the effect of interfering with an employee's performance . . . there must be evidence that the harassment was 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" Watson v. McDonough, 996 F.3d 850, 856 (8th Cir. 2021) (third alteration in original) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "Not all unpleasant conduct creates a hostile work environment. Rather, the plaintiff must show that she was singled out because of her gender [or race], and that the conduct was severe and pervasive." Williams v. City of Kansas City, 223 F.3d 749, 753 (8th Cir. 2000) (citation omitted).

Parker's hostile work environment claims fail because she cannot establish that the harassment (1) was based on her membership in a protected class; (2) was severe or pervasive; and (3) affected a term or condition of her employment. See Blake, 870 F.3d at 827. First, like with her disparate treatment claims, Parker failed to establish "the required causal nexus between the complained of harassment and [her] protected status." See Palesch v. Mo. Comm'n on Hum. Rts., 233 F.3d 560, 566 (8th Cir. 2000); Bell v. Baptist Health, 60 F.4th 1198, 1205 (8th Cir. 2023) (affirming summary judgment when the plaintiff provided no evidence that the alleged harassment "was based on sex"). Her brief is riddled with accusations that the USDA engaged in unsavory conduct without any citation to the record. See, e.g., Appellant Br. 58 (accusing her supervisor of being "known to favor men and white females" and "part of a group of 'good old boys'"). She offers "little more than speculation and conjecture to make the required connection from the mistreatment she alleges to a gender or race-based animus," and without "anything more than bare allegations," she cannot establish the required nexus to prove her harassment claims. Palesch, 233 F.3d at 567-68. Second, Parker failed to show that her working conditions were so "severe or pervasive . . . to create an objectively hostile work environment." See id. at 566. While Parker "had personality conflicts" with numerous coworkers and superiors, "this is insufficient to satisfy the threshold level of evidence" required to demonstrate a hostile work environment as Title VII does not "impose a code of workplace civility." See id. at 567. Finally, it is undisputed that Parker's pay and salary did not change throughout her tenure with the USDA. Because her "pay grade and salary remained the same throughout the timeframe at issue," Parker has not demonstrated that any alleged harassment "affected 'a term, condition, or privilege of [her] employment.'" See Watson, 996 F.3d at 856 (alteration in original) (citation omitted). Thus, the district court did not err in granting summary judgment on the hostile work environment claims.

C.

Parker also claims that she was constructively discharged and forced to resign from the USDA. "To prove a case of constructive discharge, a plaintiff must show

(1) a reasonable person in [her] situation would find the working conditions intolerable, and (2) the employer intended to force [her] to quit." Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 616 (8th Cir. 2007). Despite her voluntary resignation, Parker is still able to pursue a constructive discharge claim but has the high burden to prove that "a reasonable person in [her] situation would find the working conditions intolerable." See O'Brien v. Dep't of Agric., 532 F.3d 805, 810 (8th Cir. 2008) (alteration in original) (citation omitted). However, Parker "premises her constructive discharge claim on the same allegations [that were] insufficient to establish a hostile work environment." See id. at 811. Because a "hostile-environment constructive discharge claim entails something more" than an actionable hostile work environment and Parker has not met even this lower burden, the district court did not err in granting summary judgment on the constructive discharge claim. See Pa. State Police v. Suders, 542 U.S. 129, 147 (2004).

D.

Lastly, Parker challenges the grant of summary judgment on her retaliation claim. To establish a prima facie case of retaliation, Parker must demonstrate (1) "she engaged in protected conduct;" (2) "a reasonable employee would have found her employer's retaliatory action materially adverse; and" (3) "the materially adverse action was causally linked to her protected conduct." Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir. 2007), abrogated on other grounds by Torgerson, 643 F.3d at 1031. It is undisputed that Parker engaged in protected conduct by filing her now settled EEOC complaint in 2013. However, Parker provides no evidence of a causal nexus between her protected conduct and any alleged adverse action. First, the temporal nexus between Parker's filing of her 2013 complaint and the complained of conduct by the USDA "was not sufficiently contemporaneous to the protected activity to raise the inference of a causal connection," as the conduct occurred years after the filing of the complaint. See Littleton v. Pilot Travel Ctrs., LLC, 568 F.3d 641, 645 (8th Cir. 2009); Lewis v. St. Cloud State Univ., 467 F.3d 1133, 1138 (8th Cir. 2006) ("We have held that an interval as brief as two months did not show causation for purposes of establishing

-10-

a retaliation claim . . . ."). Moreover, this court "[g]enerally . . . requires more than a mere temporal connection in order to infer causation." Recio v. Creighton Univ., 521 F.3d 934, 941 (8th Cir. 2008). Parker cites no evidence of any retaliatory conduct that was causally connected to the filing of her 2013 complaint. Parker conceded that she never received any remedial training, reduction in pay, or disciplinary action while with the USDA, and the two letters of counseling were issued as a direct response to Parker's admitted, disruptive conduct. See Littleton, 568 F.3d at 645 (noting that a "Correction Notice concerned [the employee's] conduct months after his protected activity"); Griffith v. City of Des Moines, 387 F.3d 733, 738 (8th Cir. 2004) ("[T]he anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the work-place." (citation omitted)). Therefore, Parker did not suffer an adverse employment action connected with her protected conduct, and the district court properly granted summary judgment on the retaliation claim.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

_____

-11-