# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2203
_____

Jacqueline Pilot

*Plaintiff - Appellant*

v.

Sean Duffy, Secretary of Transportation[1]

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: April 16, 2025
Filed: July 10, 2025
_____

Before SMITH, SHEPHERD, and KOBES, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Jacqueline Pilot applied for a promotion with the Federal Aviation Administration (FAA) in Kansas City, Missouri. After a different candidate was selected, Pilot sued the Secretary of Transportation under Title VII and the Age

---

[1]Secretary Duffy was automatically substituted for his predecessor under Federal Rule of Appellate Procedure 43(c).

Discrimination in Employment Act (ADEA), alleging race, sex, and age discrimination, as well as retaliation for a previous employment discrimination complaint. The district court[2] granted summary judgment to the Secretary, and, having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

Pilot began working for the FAA in 1987. Over the next thirty years, she worked her way up through the agency, and by 2017, she was serving as a District Staff Advisor in Kansas City. In late 2018, Pilot was named acting Air Traffic Manager (ATM) for the Kansas City Downtown Air Traffic Control Tower, known as MKC. MKC provides air traffic control services to nearby aircraft and is one of 12 such facilities in the so-called Kansas City District, which extends from southern Illinois to eastern Colorado. As acting ATM, Pilot oversaw the facility, with Assistant General Manager Marc Galeski as her immediate supervisor and General Manager Daniel Needham as her second-level supervisor.[3]

But Pilot's appointment to the position was not permanent; it could last only through August of 2020 unless extended. So, in February of that year, the FAA posted a job announcement for the permanent ATM position, with Galeski as the selecting official and Needham providing assistance. They picked three individuals from around the country to review applications, hoping to avoid panelists who "had any associations with the candidates." After finding a suitable group, Galeski met with the panelists to discuss how they would complete their task. They were to follow a hiring process which had been used in the Kansas City District for almost a decade to fill the previous dozen or so permanent ATM vacancies.

---

[2]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

[3]A few months before she became acting ATM, Pilot filed a discrimination complaint naming several FAA employees including Needham, but the dispute was administratively settled.

That process comprised three parts. First, the so-called Package Review: evaluating and scoring a candidate's resume, knowledge, skills, and abilities on grammatical factors as well as substance. Candidates with a sufficiently high-scoring Package Review would move on to a Candidate Interview by the panelists. Each interview would include the same six questions, all of which Galeski selected from a human resources-approved list, and the interview panelists could ask follow-up questions for clarity only. The applicants would receive the questions 30 minutes beforehand, and each interview would last 45 minutes. Their answers were rated on a scale from "insufficient" to "expert," with designated points for each rating and with model answers provided for comparison. Finally, each candidate's manager would answer six common questions as part of a Manager Assessment, with the panel rating those responses from "extremely negative" to "extremely positive." The panel would then rank the applicants by score—assigning 10% to the Package Review, 60% to the Candidate Interview, and 30% to the Manager Assessment—before submitting its rankings to Galeski for the final decision.

As acting ATM, Pilot was an obvious contender for the permanent position. So, along with 13 other applicants, she submitted her name for consideration. The selection panel reviewed the applications and decided to interview eight applicants, Pilot included. None of the panelists knew the applicants, nor were they aware of Pilot's age, race, or history of employment discrimination complaints.[4] After completing Candidate Interviews and Manager Assessments, the panel rated and ranked the remaining candidates. It identified four as "Highly Recommended."

Pilot was ranked fourth. She had the highest Package Review score, but her Interview and Manager Recommendation brought down her ranking. The panel labeled her as "Highly Recommended," however, because a majority felt "it would be a benefit to have the acting [ATM] included" and she was only a few points below the third-ranked candidate. But the panel was unanimous that Pilot was not among the three most qualified applicants. After discussing the results with the panel,

[4]The panelists assumed Pilot was a woman based on her voice and first name.

Galeski and Needham selected the top-ranked candidate, Kyle Pitts. Like Pilot, Pitts had worked for the FAA for almost three decades and had held several management level positions. What made Pitts stand out, however, was his "higher understanding of labor relations," as well as the fact that he "demonstrated competencies better than [Pilot] during his interview." Pitts started as ATM, and Pilot helped train him and assist with his transition into the role. Six months later, however, Pitts quit without completing his probationary employment period. Pitts is a white man and, at the time of his selection, was 54 years old. Pilot is a Black woman, and she was 58.

Pilot sued the Secretary, alleging that Needham discriminated against her based on her race, sex, and age by not selecting her as permanent ATM and that her non-selection was retaliation for her prior discrimination complaint. After proceeding through discovery, the Secretary moved for summary judgment, which the district court granted.

## II.

Pilot argues that the district court erred in granting summary judgment to the Secretary, a decision we review de novo. See Parker v. U.S. Dep't of Agric., 129 F.4th 1104, 1111 (8th Cir. 2025). In conducting our review, "[w]e view the evidence, and all reasonable inferences taken therefrom, in the light most favorable to [Pilot]," and "[w]e will uphold [the] grant of summary judgment 'if the [Secretary] shows that there is no genuine dispute as to any material fact and the [Secretary] is entitled to judgment as a matter of law.'" Aulick v. Skybridge Ams., Inc., 860 F.3d 613, 620 (8th Cir. 2017) (citations omitted); see Fed. R. Civ. P. 56(a).

Title VII prohibits an employer from discriminating against any person "because of" that person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); see generally Muldrow v. City of St. Louis, 601 U.S. 346, 354 (2024). Likewise, the ADEA prohibits employment discrimination "because of" that person's age. 29 U.S.C. § 623(a)(1); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). Both statutes also share a similar prohibition on retaliation

-4-

"because" someone made a prior charge of discrimination. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d); see Heisler v. Nationwide Mut. Ins. Co., 931 F.3d 786, 794 (8th Cir. 2019). Given these similarities, claims lacking direct evidence of discrimination or retaliation under either statute are analyzed under the burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).[5] See Grant v. City of Blytheville, 841 F.3d 767, 773 (8th Cir. 2016) (applying burden-shifting framework to race and age discrimination claims); Bell v. Baptist Health, 60 F.4th 1198, 1203 (8th Cir. 2023) (applying McDonnell Douglas to retaliation claim). Pilot concedes this framework applies to all of her claims on appeal.

Accordingly, Pilot bears the burden of making a "prima facie case of discrimination" and retaliation. See Parker, 129 F.4th at 1111 (citation omitted); Bell, 60 F.4th at 1203. She must show that she is "a member of a protected group," was "meeting the legitimate expectations of [her] employer," and "suffered an adverse employment action . . . under circumstances permitting an 'inference of discrimination.'" Parker, 129 F.4th at 1111 (citation omitted); see also Bell, 60 F.4th at 1203 (requiring "that (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct" (citation omitted)). Only then does the burden shift to the Secretary to "articulat[e] a nondiscriminatory [and non-retaliatory] reason" for the employer's action. See Parker, 129 F.4th at 1111 (citation omitted); Gibson v. Concrete Equip. Co., 960 F.3d 1057, 1064 (8th Cir. 2020) (reciting the standard for retaliation claims). Assuming the Secretary clears this hurdle, which we have described as "not onerous," the burden shifts back to Pilot to show that the Secretary's reason was "pretext for discrimination" or retaliation. Canning v.

---

[5]Though it is "unclear whether McDonnell Douglas technically applies to the ADEA" due to differing causation requirements, we have applied the framework in cases raising both ADEA and Title VII claims. See Heisler, 931 F.3d at 794-95 (describing the different standards). For our purposes, "a plaintiff who fails to meet the lower standard of Title VII . . . necessarily fails to meet the ADEA's standard as well," and we need only discuss the heightened standard if a claim "survives" McDonnell Douglas. See id. at 795.

Creighton Univ., 995 F.3d 603, 611 (8th Cir. 2021) (citation omitted); Gibson, 960 F.3d at 1064. The Secretary concedes that Pilot has made a prima facie case for her race, sex, and retaliation claims, and we assume she did the same for her age discrimination claim.[6] Likewise, Pilot does not dispute that the Secretary has offered a "clear and reasonably specific" nondiscriminatory and non-retaliatory reason for its decision—the FAA hired the highest-ranked candidate. See Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 258 (1981). That leaves us at the final step of the McDonnell Douglas framework: whether Pilot has shown that the Secretary's proffered reason was pretextual.

There are "at least two ways" she can do so: by showing that "the employer's explanation is 'unworthy of credence . . . because it has no basis in fact,'" or "by persuading the court that a [prohibited] reason more likely motivated the employer." Torgerson v. City of Rochester, 643 F.3d 1031, 1047 (8th Cir. 2011) (en banc) (alterations in original) (citations omitted). This latter path includes things like an employer failing to follow its own policies, treating similarly situated employees differently, or shifting its explanation for the employment decision. See Lake v. Yellow Transp., Inc., 596 F.3d 871, 874 (8th Cir. 2010). Ultimately, however, her burden to show pretext "merges" with her burden to show that she is "the victim of intentional discrimination." Torgerson, 643 F.3d at 1046 (quoting Burdine, 450 U.S. at 256); see Gibson, 960 F.3d at 1064 (noting that plaintiff retains burden to "create[] a reasonable inference" of retaliation (citation omitted)). In other words, Pilot must present sufficient evidence that she was not promoted "because" of her race, sex, age, or prior discrimination complaint. See 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a); 29 U.S.C. § 623(a)(1), (d). As in the district court, Pilot makes three broad arguments that she has carried her burden. None withstands scrutiny.

_____

[6]But see, e.g., Schlitz v. Burlington N. R.R., 115 F.3d 1407, 1413 (8th Cir. 1997) (rejecting prima facie age discrimination case because a five-year age gap did not raise an inference of discrimination); see also Girten v. McRentals, Inc., 337 F.3d 979, 982 (8th Cir. 2003) (doubting that a nine-year gap was sufficient); O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996) (suggesting that a three-year age gap is "very thin evidence").

First, there is no evidence that the selection process violated FAA policies. See Lake, 596 F.3d at 874 (noting that policy violations can support inference of pretext). Though Pilot offered a declaration from a former employee—from a different district—who "never heard of a selecting official" using the system employed here, she presented no evidence of any policy *prohibiting* that practice. See Young v. Builders Steel Co., 754 F.3d 573, 578 (8th Cir. 2014). She only cites the FAA's policy for performance reviews, which does not apply to the hiring or promotion process. Cf. Bonomo v. Boeing Co., 63 F.4th 736, 743 (8th Cir. 2023) (rejecting argument that defendant "failed to follow its own policy" when company policy suggested, but did not require, additional factors to be considered).

Even if the system adopted here violated some unnamed policy, Pilot still must point to evidence that the FAA "was more likely motivated by race[, age, sex, or a prior discrimination complaint] than by its proffered justification." See Schaffhauser v. United Parcel Serv., Inc., 794 F.3d 899, 904 (8th Cir. 2015). The record before us lacks such evidence. Galeski testified that the system had been used for almost a decade, including for other permanent ATM vacancies. While Pilot contends that this testimony is self-serving and therefore puts Galeski's credibility at issue, she fails to point to any part of the record suggesting that Galeski's statement is untrue. Rather, the record shows that her supervisors used a policy-compliant system that had been in place for several years.

Pilot's argument that the hiring process relied on overly subjective criteria fares no better. In Torgerson v. City of Rochester, we addressed a similar claim from firefighters who scored "far below" the hired candidates on the employer's rubric. 643 F.3d at 1049. The plaintiffs argued that the interview process was "so subjective" that the "ranking of candidates ha[d] no basis in fact." Id. As we noted, however, "[w]here the employer does not rely exclusively on subjective criteria, but also on objective criteria and education, the use of subjective considerations does not give rise to an inference of discrimination." Id. So long as "employees are evaluated on an objective performance scale by a uniformly applied process," we said, "the subjectivity of some components cannot in and of itself prove pretext or

-7-

discriminatory intent." Id. at 1050-51. That description matches what happened here. Each of the candidates went through the same process with the same questions. While the process included subjective criteria—such as responses to those questions—the interviewers were given a scoring rubric with model answers and a scoring range, thereby reducing any subjectivity. See id. Moreover, in Torgerson, we rejected the argument that use of subjective criteria is itself evidence of pretext. Id. at 1050-51. As in that case, Pilot's argument boils down to dissatisfaction with the subjective criteria, something that does not show pretext.

Finally, Pilot asserts that Pitts was "clearly less qualified" than she. While hiring a "less qualified" applicant can show pretext, see Kincaid v. City of Omaha, 378 F.3d 799, 805 (8th Cir. 2004), the hired applicant must be "substantially" so. See Torgerson, 643 F.3d at 1049. "If the comparison 'reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate,' then no inference of . . . discrimination would arise." Id. (alteration in original) (citation omitted). Though she claims Pitts had substantially less experience, the record shows that both Pitts and Pilot have comparable qualifications. As the Secretary notes, Pitts and Pilot had similar career experiences and were both qualified for the position. Whatever minor differences there might be, they are insufficient to show pretext. See Torgerson, 643 F.3d at 1049. So too is the fact that Pitts only lasted six months as ATM. Even assuming Pitts quit because of his poor performance, an employer does not discriminate merely because the promoted employee performed poorly. See Burdine, 450 U.S. at 259; Plumb v. Potter, 212 F. App'x 472, 481 (6th Cir. 2007) (noting that an employee's "poor performance" does not demonstrate that "the decision to promote that employee was pretext"). At most, this would show that the FAA made a bad decision. But the relevant question is not whether the employer made the wrong choice; it is whether that choice was motivated by unlawful discrimination or retaliation. See Burdine, 450 U.S. at 259.

In all material respects, this case parallels Torgerson: the hiring process used a mix of objective and subjective criteria based on pre-approved questions and practices; the employer endeavored to give the subjective criteria objective metrics;

and the top-ranked candidate was hired. Pilot asserts that the subjective rankings were based on questions unrelated to the job, but "it is the employer's role to identify those strengths that constitute the best qualified applicant," not ours. See Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 916 (8th Cir. 2007). While she urges us to hold that any subjective criteria "must address the [position's] essential critical functions" it is not our place to say which qualities an applicant should possess. We do not "sit as [a] super-personnel department[]," and the Court will not insert itself into an internal hiring process absent evidence of discrimination and pretext. See id. (citation omitted). That evidence is absent from the record before us.

Pilot's theory is that her supervisors developed a novel, overly subjective hiring process to prevent her from getting promoted, and that they did so "because" she is a 58-year-old black woman who filed a discrimination charge against them previously. See 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a); 29 U.S.C. § 623(a)(1), (d). The evidence in the record, however, does not support that theory. Instead, even viewed in the light most favorable to Pilot, the record shows that Galeski and Needham employed a policy-compliant procedure used for almost a decade. They used a panel of interviewers with no connection to MKC and no prior knowledge of Pilot's age, race, sex, or history of discrimination complaints. Each candidate was asked the same preapproved questions, and their answers were scored based on a standardized rubric. The four highest scorers were then forwarded to Needham and Galeski, who then selected the top-ranked candidate. Those facts do not show pretext. They are insufficient to carry Pilot's burden, and the district court correctly granted summary judgment to the Secretary on that basis.

III.

For these reasons, we affirm.

_____